[Civ. No. 36614. Second Dist., Div. Five. Jan. 4, 1972.]

CRIMINAL COURTS BAR ASSOCIATION, Plaintiff and Appellant, v. THE STATE BAR OF CALIFORNIA, Defendant and Respondent.

682

## COUNSEL

Marks, Sherman & London, Marks, Sherman & Schwartz, Burton Marks and Morton Herbert for Plaintiff and Appellant.

F. LeMar Forshee, Herbert M. Rosenthal and E. Talbot Callister for Defendant and Respondent.

## OPINION

**KAUS, P. J.** — Plaintiff, the Criminal Courts Bar Association (CCBA) appeals from a judgment declaring certain rules and regulations of defendant, the State Bar of California (State Bar) valid as to CCBA. These rules, in effect, make it impossible for CCBA to be represented at meetings of the State Bar's Conference of Delegates (Conference).

The case was decided on cross-motions for summary judgment. There is no conflict in the evidence. The parties agree that the only question before the trial court was one of law.

### FACTS

In order to understand the issues, it will be helpful to examine briefly the history of both litigants.

The State Bar is a public corporation of which every person admitted and licensed to practice law in California must be a member. Its functions are delineated by the State Bar Act (Bus. & Prof. Code, § 6000 et seq), certain other statutes (e.g., Gov. Code, § 10307), rules of court (e.g., Cal. Rules of Court, rule 59) and, of course, judicial decisions (e.g., *State Bar of California* v. *Superior Court*, 207 Cal. 323 [278 P. 432]). It is governed by a board of governors (Board). All powers granted to the State Bar may be exercised by the Board. (Bus. & Prof. Code, § 6008.4.) Subject to the laws of California, the Board has the power to formulate and declare rules and regulations necessary or expedient for carrying out the purposes of the State Bar Act. (Bus. & Prof. Code, § 6025.) Under State Bar rules all committees, conferences, agencies and officers are subject to the Board's supervision and control and have only such powers, duties and authority as may be conferred to them by the Board. (State Bar Rules and Regulations, art. XIII.)

The Conference is entirely a creature of the Board, having been created by it in 1934. It holds an annual meeting concurrent with the annual meeting of the State Bar. Its purpose was declared to be as follows:

"The Conference of Delegates shall act upon all matters referred to it at its meetings or by the Board of Governors; make recommendations to the Board of Governors; make recommendations to associations respecting

their activities; and act upon all resolutions suggesting a change in law, or which will require legislation to accomplish their intent." (State Bar Rules and Regulations, art. VI, § 2.) The Conference makes an annual report to the Board which then either approves, disapproves or takes no action on recommendations of the Conference. It may also refer recommendations of the Conference to an appropriate standing or special committee for study and report. The Board has created numerous such committees, which also make recommendations on matters within their respective spheres to the Board.

Delegates to the Conference consist of certain delegates at large and members of bar associations which comply with certain requirements laid down in State Bar rules. These rules also provide for a procedure whereby members of the State Bar who are not members of any qualified bar association may meet annually in December and elect delegates to the Conference from their number.

Plaintiff, CCBA, is a nonprofit corporation. It was formed in 1954. Until November 13, 1962, only attorneys "who are interested in the defense of persons accused of crime and who believe in the principles of the Constitution and Government of the United States" were eligible to become active members. The by-laws also provided for honorary membership for judges and "outstanding persons of the community who are interested in the promotion of the administration of criminal justice."[1]

In 1962 CCBA became interested in sending delegates to the Conference. Applicable State Bar rules in effect at the time did not allow CCBA to become what was then known as a "recognized" bar association, because it restricted membership to the defense side of the criminal bar. Accordingly, in November 1962, CCBA amended its by-laws and membership became open to "all persons who are members in good standing of the State Bar of California." Membership also became available to judges of courts of record and fulltime members of the faculties of accredited law schools. The Board then granted recognition to CCBA which has sent delegates to the Conference ever since.[2] CCBA was the first "specialized" bar association which had been recognized by the Board. Its recognition was quickly followed by application for recognition from four other specialized bar associations. The Board then started to have

---

[1]The record does not explain why it was thought necessary to provide, separately, for honorary membership for judges.

[2]Even though, as shall be seen, the present by-laws of the State Bar, if applicable, deny representation to CCBA, as far as the CCBA is concerned the Board suspended operation of the by-laws during the pendency of this litigation or further order of the Board.

second thoughts about specialized bar associations being represented at the Conference. Both the Board and the executive committee of the Conference studied the matter at length and, in due course, the Board's rules and regulations were amended to express the following qualifications for representation at the Conference: "The name of the bar association shall not indicate or imply that the membership consists of or is limited to members of the State Bar who are now practicing or interested in a particular area of the law. No bar association shall be recognized if it limits membership to persons engaged in practice in a particular area of the law, or if it regularly devotes the major part of its meetings or activities to a particular area of the law. . . ." CCBA runs afoul of only two of the three conditions contained in the amended rules: as noted membership is now open to any member of the State Bar regardless of whether he practices or is interested in criminal law, but CCBA's name implies that membership is thus limited and it does restrict its interests to criminal law related matters.

In the Spring of 1965 the State Bar advised CCBA that it had to comply with the amended rules on or before January 1, 1966. CCBA announced that its Board of Governors had voted to continue the use of its name and to continue to devote the major part of its activities to criminal law related matters, but that it would nevertheless seek continued recognition by the State Bar. Meanwhile the executive committee of the Conference, at the request of the Board, continued its study relating to the desirability of conference representation by specialized bars. This study continued over a period of years and resulted in the Board's determination, in March 1968, not to change the rules as amended, at least insofar as they precluded conference representation by CCBA. It did, however, add a rule—presumably applicable to CCBA—to the effect that nonconforming associations had one year from the effective date of the new rule to comply with the provisions respecting eligibility for representation at the Conference.

## DISCUSSION

Before dealing with the specific contentions made by CCBA, it is well to emphasize what this controversy is about and what it is not about. The linguistic fervor of CCBA's brief would make one think that the Board had denied it and its members some basic right of citizenship, such as the right to vote or to petition for a redress of grievances. Nothing could be further from the truth. The Conference is nothing but a body of lawyers whom the Board has constituted and whose sole function, in practice, is to advise the Board. None of its recommendations are binding, nor is it by any means the only source from which the Board receives advice. There

are, of course, the numerous committees the Board has created. Besides, the record shows without contradiction that the Board is willing to listen to anyone who feels he can be of assistance to it. Thus none of CCBA's members is denied access to the Board. Indeed, as noted, the members, simply as members of the State Bar can follow a procedure outlined by the Board's rules by meeting annually in December and electing delegates to the Conference. Further under the State Bar's rules for the Conference presently in effect, any member of the State Bar may file resolutions for consideration by the Conference and the proponent of any such resolution has an absolute right to speak in furtherance thereof, even if he is not a delegate.[3] Therefore the sole right denied CCBA is the right to have delegates speak and vote in its name, rather than as individuals.[4]

CCBA's argument that the State Bar must continue to permit it to send delegates to the Conference sports a variety of constitutional flags. What it all boils down to, however, is an argument that the State Bar is estopped to enforce the present regulations against CCBA, because CCBA radically changed its nature in order to comply with the former requirements and cannot unscramble the egg to revert to its former composition. This argument is presented, in part, as a claim that CCBA acquired a "vested right" to representation in 1963; it is further claimed that the presumption against retroactivity prevents the State Bar from applying the new rules against CCBA, that it would be in excess of the powers of the State Bar to so apply them and that, in any event, such application would be "arbitrary and capricious, denying [CCBA] valuable rights without due process of law."

We believe that none of these points has merit.

Whether or not the application of the new rules to CCBA's representation at future meetings of the Conference can properly be labeled as "retroactive," one thing is certain: by its rule giving it until one year from March 1968 to qualify under the changed rules, the Board, in no uncertain terms, expressed its intent that no nonconforming bar association should continue to send delegates to the Conference. This leaves no room for any presumption against retroactivity.

---

[3]With the consent of the Conference any active member of the State Bar may be granted the right to speak on any matter under consideration, whether or not he is a delegate or the proponent of a resolution.

[4]This right apparently has become less valuable than it used to be. CCBA's showing indicates that when it was an association consisting of defenders of persons accused of crime, it had a point of view. However, after prosecutors were admitted "an almost natural split occurred, with the result that as to many proposed legislative changes, our [legislative] committee was unable to agree on the basic position of the Criminal Court Bar Association and, therefore, had to take a 'no position' position."

CCBA cites *In re Cate,* 207 Cal. 443 [279 P. 131] for the proposition that the State Bar Act was entirely prospective and argues from that premise that the Board was powerless to make retroactive rules. *Cate* merely held that the enactment of the State Bar Act did not deprive a court of jurisdiction to decide a reinstatement proceeding then pending. This is a far cry from CCBA's proposition that the State Bar cannot, from time to time, promulgate new ground rules for the nature and composition of bar associations who are permitted to send delegates to an advisory conference.

CCBA's counsel on this appeal are far too sophisticated not to recognize that labeling its previous right to representation at the Conference as "vested" is simply a way of assuming a favorable result in this litigation. ■ As has been said many times in one way or another: "First of all, use of the term 'vested right' as a term of approach to problem settlement is not helpful. The term is 'conclusory.' ■ '[A] right is vested when it has been so far perfected that it cannot be taken away by statute.' (See Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation* (1960) 73 Harv.L.Rev. 692, 696, 698.) ■ It is said in *Miller* v. *McKenna,* 23 Cal.2d 774, 783 [147 P.2d 531]: '. . . [A] vested right, as that term is used in relation to constitutional guaranties, implies an interest which it is proper for the state to recognize and protect, and of which the individual may not be deprived arbitrarily without injustice. The question of what constitutes such a right is confided to the courts.' " (*Flournoy* v. *State of California,* 230 Cal.App.2d 520, 530-531 [41 Cal. Rptr. 190]; see also *County of Los Angeles* v. *Superior Court,* 62 Cal.2d 839, 844-845 [44 Cal.Rptr. 796, 402 P.2d 868].)

■ We return then to the basic question whether there is any rule of law which prohibits CCBA's ouster from the Conference unless it chooses to comply with the new requirements for qualification. We know of none. While CCBA claims that in changing the qualifications the State Bar acted arbitrarily and capriciously, any claim that the new qualifications, as such, are arbitrary or capricious was expressly abandoned at oral argument before us and we got right back to the basic claim that the new rules could not be enforced against CCBA because it changed its by-laws to comply with the old ones. In other words CCBA claims that its constitutional rights require us to read some kind of grandfather clause into the State Bar's rules and regulations.[5]

---

[5]It so happens that the only bar association affected by the new rules is CCBA and that it did change its by-laws to qualify for representation. One cannot help wondering whether the implied grandfather clause for which CCBA argues would be

We must disagree. Nothing in the record before us indicates that the State Bar made any representation to CCBA that if it changed its composition to comply with the rules then in effect, such rules would remain unchanged so as never to exclude it. By deciding to convert from a super-specialized bar association consisting only of defenders, to one which all members of the State Bar could join, CCBA took a calculated risk. Apparently it was felt that the sacrifice of homogeneity was worth the price, but there existed no reason whatever to believe that the price was representation at the Conference in perpetuity.

As far as CCBA's constitutional arguments are concerned, neither side has been able to cite a case directly in point.[6]

The cases which perhaps come closest to the one at bar, are those relating to state laws which severely limit or circumscribe the previously legal practice of a trade or profession. We will refer to just a few.

Fairly recently, in *Ferguson* v. *Skrupa*, 372 U.S. 726 [10 L.Ed.2d 93, 83 S.Ct. 1028, 95 A.L.R.2d 1347] the Supreme Court upheld a Kansas statute which prohibited anyone except attorneys from engaging in the business of debt adjusting. Holding that the wisdom of the legislation was for the Legislature, the statute was upheld. Earlier, in *Williamson* v. *Lee Optical Co.*, 348 U.S. 483 [99 L.Ed. 563, 75 S.Ct. 461], a statute which prohibited opticians from fitting or duplicating prescription lenses without a prescription in their file, survived. In *Daniel* v. *Family Sec. Life Ins. Co.*, 336 U.S. 220 [93 L.Ed. 632, 69 S.Ct. 550, 10 A.L.R.2d 945], a South Carolina statute prohibited undertakers from serving as agents for life insurance companies. It was held valid. Finally in *Semler* v. *Oregon State Board of Dental Examiners*, 294 U.S. 608 [79 L.Ed. 1086, 55 S.Ct. 570] a dentist whose entire practice was built on a policy of advertising his services to the public and who had made heavy commitments based on his continued ability to so advertise, was unsuccessful in attacking a new state law which prohibited the practice.

applicable to a hypothetical specialized bar association that did not have to change its by-laws to qualify and whether, if not applicable to such an association, it would deprive it of equal protection.

[6]In the trial court CCBA relied in part on *Pinsker* v. *Pacific Coast Soc. of Orthodontists*, 1 Cal.3d 160 [81 Cal.Rptr. 623, 460 P.2d 495]. Wisely, reliance on *Pinsker* was abandoned before us. That case involved exclusion from a private organization of dentists specializing in orthodontics. Since membership in that organization was a "practical necessity" for a dentist who wished to practice orthodontics, an arbitrary exclusion from the organization was enjoined. It requires no elaboration to demonstrate that it is not a matter of practical necessity for CCBA's survival to send a few delegates to an advisory conference of about 500 attorneys who meet once a year for a couple of days.

It seems to us that in all of those cases the encroachment on rights previously enjoyed was far more serious than the deprivation suffered by CCBA.

Of course, it is most commendable of CCBA to be willing to have some of its members undertake the arduous and, in the main, thankless task of working through, speaking about and voting on the piles of resolutions which face the Conference every year. However, if the State Bar, for reasons sufficient to it, does not desire the counsel of CCBA as presently constituted, through the channel of the Conference, we see nothing that the courts can do about it.

The judgment is affirmed.

Stephens, J., and Reppy, J., concurred.

A petition for a rehearing was denied January 25, 1972.