173 Cal.App.4th 1095 (2009)
___ Cal.Rptr.3d ___
G.G. DOE et al., Plaintiffs and Appellants,
v.
CALIFORNIA DEPARTMENT OF JUSTICE, Defendant and Respondent.
No. D053176.
Court of Appeals of California, Fourth District, Division One.
May 7, 2009.
*1101 Michael D. McGlinn and Ryan M. McGlinn for Plaintiffs and Appellants.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Scott C. Taylor and Marissa Bejarano, Deputy Attorneys General, for Defendant and Respondent.

OPINION
McCONNELL, P. J.
Under California's version of "Megan's Law," 2004 legislation allowed persons convicted of specified sex crimes to, on successful completion of probation, apply to have their names, pictures and other identifying information excluded from an Internet Web site maintained by the California Department of Justice (the Department).[1] As amended in 2005, however, the exclusion is available only to a parent, stepparent, sibling or grandparent of the victim, when the crime did not involve oral copulation or any penetration. In 2006, the Legislature expressly made the amendment retroactive.
G.G. Doe and B.M. Doe, convicted child molesters, appeal a judgment in which the court denied their petition for an order prohibiting the Department from posting their information on the Megan's Law Web site. They contend the Department is equitably estopped from doing so because they detrimentally relied on exclusions they received in the summer of 2005 before the law changed. Further, they contend the 2006 amendment making the new law *1102 retroactive constitutes an unconstitutional ex post facto law, and violates their constitutional rights in numerous other respects. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND[2]
In the early 1980's G.G. was convicted of committing a lewd and/or lascivious act on a child under the age of 14, a felony (Pen. Code, § 288, subd. (a))[3], and B.M. was convicted of oral copulation with a child under the age of 16, also a felony (§ 288a, subd. (b)(2)). Their victims were family members. They were granted probation and successfully completed it, but they must nonetheless register under the Sex Offender Registration Act for life. (§ 290, subds. (a), (b).) In 1997 B.M.'s conviction was dismissed under section 1203.4, but his registration duty continues.
(1) California's Megan's Law provides for the collection and public disclosure of information regarding sex offenders required to register under section 290. (Wright v. Superior Court (1997) 15 Cal.4th 521, 529 [63 Cal.Rptr.2d 322, 936 P.2d 101]; Fredenburg v. City of Fremont (2004) 119 Cal.App.4th 408, 413 [14 Cal.Rptr.3d 437].) In 2004 the Legislature enacted section 290.46, which requires the Department to maintain an Internet Web site that includes information on persons convicted of specified sex offenses, such as the offender's name, address, aliases, photograph, physical description, date of birth, criminal history and other information the Department deems relevant. (§§ 290.46, subds. (a)(1), (b)(1), (2)(G) & (H); Stats. 2004, ch. 745, § 1.)
Section 290.46 originally allowed offenders to apply to the Department for exclusion from the Megan's Law Web site on proof they successfully completed probation granted under section 1203.066. (§ 290.46, former subd. (e)(2)(C), enacted by Stats. 2004, ch. 745, § 1.) At the time, section 1203.066 allowed probation for certain serious sex offenses when "the defendant is the victim's natural parent, adoptive parent, stepparent, relative, or is a member of the victim's household who has lived in the victim's household." (§ 1203.066, former subd. (c)(1).)[4] The exclusion applied to "a very narrow category of non-violent, intra-familial offenders convicted of child molestation who, unlike all other sex offenders, are eligible for probation." The Senate Committee on Public Safety explained that sometimes such cases can be prosecuted only because "`family member witnesses are willing to cooperate with prosecutors because of the availability of probation.'" *1103 (Sen. Com. on Pub. Safety, Analysis of Assem. Bill No. 1323 (2005-2006 Reg. Sess.) as amended Apr. 13, 2005, for hearing on June 28, 2005, p. N, quoting Sen. Com. on Pub. Safety, Analysis of Assem. Bill No. 488 (2003-2004 Reg. Sess.) as amended June 14, 2004, for hearing on June 22, 2004, p. T.)
G.G. and B.M. qualified for exclusions. They applied for exclusions and the Department granted them in June (B.M.) and July (G.G.) 2005.
(2) Effective October 7, 2005, however, the Legislature amended section 290.46 to limit the availability of the exclusion. It now applies only when an offender proves he "was the victim's parent, stepparent, sibling, or grandparent and that the crime did not involve either oral copulation or penetration of the vagina or rectum of either the victim or the offender by the penis of the other or by any foreign object." (§ 290.46, subd. (e)(2)(C)(i) as amended by Stats. 2005, ch. 722, § 7.) The offender must also prove he successfully completed probation, but the probation need not have been granted under section 1203.066. (§ 290.46, subd. (e)(2)(C)(i).)
Effective September 20, 2006, the Legislature expressly made the 2005 amendment retroactive. (§ 290.46, subd. (e)(3), added by Stats. 2006, ch. 337, § 19.) B.M. is now ineligible for the exclusion because of the seriousness of his crime, and G.G. is ineligible because he is the victim's uncle rather than a parent, stepparent, sibling or grandparent.[5]
In July 2007 the Department notified G.G. and B.M. of their ineligibility. They asked the Department not to rescind their exclusions, but it refused absent court intervention. In August 2007 they filed a petition against the Department for extraordinary writ relief, arguing it is equitably estopped from posting their information on the Megan's Law Web site because they detrimentally relied on the exclusions they obtained in mid-2005 under the old law. Further, they argued the 2006 retroactivity measure is constitutionally unsound for a variety of reasons: it takes away fundamental vested rights, the previous exclusions, without due process of law; it constitutes a forbidden ex post facto law; it violates their liberty interests in privacy and in their reputations; and it violates G.G.'s right to equal protection as it treats uncles of victims differently than parents, stepparents, siblings and grandparents of victims. B.M. also contends the posting of his information on the Web site violates section 1203.4, under which his conviction was dismissed in 1997.
The court denied the petition, and granted G.G. and B.M.'s unopposed request to stay enforcement of the judgment pending this appeal.

*1104 DISCUSSION

I

Equitable Estoppel
(3) "`Generally speaking, four elements must be present . . .: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury.'" (Robinson v. Fair Employment & Housing Com. (1992) 2 Cal.4th 226, 244-245 [5 Cal.Rptr.2d 782, 825 P.2d 767].) "The doctrine of estoppel is available against the government `"where justice and right require it."' [Citation.] It has been applied when the government has misled a claimant [citations], but will not be applied if to do so would nullify a `"strong rule of policy adopted for the benefit of the public." [Citation.]'" (Id. at p. 244.)
G.G. and B.M. contend the Department is equitably estopped from rescinding their exclusions from disclosure on the Megan's Law Web site. They complain that in mid-2005 when they were granted the disclosure exclusions "they were never notified nor were they aware . . . that the Government could rescind their exclusions years later." They assert that "[i]n reliance on the exclusion, each managed his life with the assurance and promise that they would not be publicly exposed as sex offenders on the internet. . . . To pull the rug out from under them now, after they have relied upon the assurance that they would not be placed on the internet, is unfair and inequitable." They claim they "relied upon the exclusion by going about their lives fully believing that their prior misconduct, occurring over twenty years ago, would not be exposed publicly on the internet. [They] maintained employment and ran their households under the promise and belief that their lives would not be turned upside down by the public humiliation and exposure of being placed on the Megan's Law [Web site]."
(4) G.G. and B.M., however, adduced no evidence the Department ever assured them their exclusions were ironclad and the Megan's Law disclosure requirements were never subject to amendment. Indeed, the Department could not have done so as it does not control the Legislature. Further, G.G. and B.M. adduced no evidence of detrimental reliance on the exclusions. Their convictions were in the early 1980's. Section 290.46 was not enacted until 2004 and they received their exclusions in June 2005 (B.M.) and July 2005 (G.G.). Thus, they certainly did not rely on the exclusions in conducting their defenses or successfully completing their three-year (B.M.) and five-year (G.G.) probation periods. (See People v. Treadway (2008) 163 *1105 Cal.App.4th 689, 698 [77 Cal.Rptr.3d 786].) Also, G.G. and B.M. submitted no evidence of how they would have conducted their lives differently after they obtained exclusions in mid-2005 had they known the Legislature could rescind them. Would they not have continued to maintain their employment and their households? Would they have waived their right to apply for exclusions, thereby immediately exposing themselves and their families to the public humiliation they now fear? We find their position patently meritless.
Further, there is a strong public policy against applying the doctrine against the government here. The purpose of section 290.46 is "`to ensure that members of the public have adequate information about the identities and locations of sex offenders who may put them and their families at risk.'" (Historical and Statutory Notes, 48 West's Ann. Pen. Code (2008 ed.) foll. § 290.46, p. 374.) The "`release of certain information about sex offenders to public agencies and the general public will assist in protecting the public safety.'" (Smith v. Doe, supra, 538 U.S. at p. 93 [pertaining to Alaska law]; see also People v. Hofsheier (2006) 37 Cal.4th 1185, 1196 [39 Cal.Rptr.3d 821, 129 P.3d 29] [pertaining to § 290].) The 2006 retroactivity measure requires the disclosure of additional information on the Megan's Law Web site and promotes public safety.

II

Constitutional Challenges

A

Vested Rights
(5) G.G. and B.M. contend they have vested rights in the exclusions the Department previously granted them, and the 2006 legislation that makes the change in the law retroactive violates their rights without due process of law. "`A retrospective law is one which affects rights, obligations, acts, transactions and conditions which are performed or exist prior to the adoption of the statute. [Citations.]' [Citation.] `Phrased another way, a statute that operates to "increase a party's liability for past conduct" is retroactive. [Citations.]'" (Bouley v. Long Beach Memorial Medical Center (2005) 127 Cal.App.4th 601, 606 [25 Cal.Rptr.3d 813] (Bouley).) "If the Legislature has clearly indicated its intent that . . . amendments operate retroactively, we must carry out that intent unless the Constitution forbids. [Citations.] `[A] statute's retroactivity is, in the first instance, a policy determination for the Legislature and one to which courts defer absent "some constitutional objection" to retroactivity. [Citation.]'" (Id. at p. 607.)
*1106 (6) "`[R]etroactive application of a statute may be unconstitutional if it is an ex post facto law, if it deprives a person of a vested right without due process of law, or if it impairs the obligation of a contract.'" (Bouley, supra, 127 Cal.App.4th at p. 609.) Due process requires "reasonable notice and an opportunity for hearing." (7 Witkin, Summary of Cal. Law (10th ed. 2005) Constitutional Law, § 640, p. 1041.)
(7) "Courts have interpreted fundamental vested rights to include individual rights guaranteed under the due process and equal protection clauses of the state and federal Constitutions." (JKH Enterprises, Inc. v. Department of Industrial Relations (2006) 142 Cal.App.4th 1046, 1060 [48 Cal.Rptr.3d 563].) "`A "fundamental vested right" has been defined in terms of a contrast between a right possessed and one that is merely sought. [Citation.] "`The term "vested" denotes a right that is either "already possessed" [citation] or "legitimately acquired" [citation].'"'" (Ibid.) "A right is vested when it is so perfected that it cannot be taken away by statute ...." (Sagaser v. McCarthy (1986) 176 Cal.App.3d 288, 308 [221 Cal.Rptr. 746].) A "vested right, as that term is used in relation to constitutional guaranties, implies an interest which it is proper for the state to recognize and protect, and of which the individual may not be deprived arbitrarily without injustice. The question of what constitutes such a right is confided to the courts." (Miller v. McKenna (1944) 23 Cal.2d 774, 783 [147 P.2d 531].)
(8) "In determining whether a retroactive law contravenes the due process clause, we consider such factors as the significance of the state interest served by the law, the importance of the retroactive application of the law to the effectuation of that interest, the extent of reliance upon the former law, the legitimacy of that reliance, the extent of actions taken on the basis of that reliance, and the extent to which the retroactive application of the new law would disrupt those actions." (In re Marriage of Bouquet (1976) 16 Cal.3d 583, 592 [128 Cal.Rptr. 427, 546 P.2d 1371]; see Sagaser v. McCarthy, supra, 176 Cal.App.3d at p. 308.)
Notably, most of these factors pertain to a party's justifiable reliance on the old law. As discussed above, however, G.G. and B.M. showed no justifiable reliance on the continuation of their exclusions under section 290.46, former subdivision (e). They argue that the exposure of their crimes on the Megan's Law Web site will humiliate and adversely impact them and their families, and while we acknowledge that potential (see People v. Hofsheier, supra, 37 Cal.4th at p. 1197), it does not constitute justifiable reliance.
(9) Additionally, "it is presumed that a statutory scheme is not intended to create private contractual or vested rights . . .," and a party claiming otherwise must overcome the presumption. (Walsh v. Board of Administration *1107 (1992) 4 Cal.App.4th 682, 697 [6 Cal.Rptr.2d 118].) "`The principal function of a legislative body is not to make contracts but to make laws which declare the policy of the state and are subject to repeal when a subsequent legislature shall determine to alter that policy.'" (Ibid., citing Dodge v. Board of Education (1937) 302 U.S. 74, 79 [82 L.Ed. 57, 58 S.Ct. 98].) The state has a significant and valid interest in disseminating information to the public on sex offenders, and G.G. and B.M. have not overcome the presumption. Rather, they use the term "vested rights" in a conclusory fashion. (Criminal Courts Bar Assn. v. State Bar (1972) 22 Cal.App.3d 681, 687 [99 Cal.Rptr. 661].) They cite no authority suggesting there is anything inherent in exclusions granted under section 290.46, former subdivision (e), that prohibits modification under constitutional principles. (See Walsh v. Board of Administration, supra, at p. 697.) As there is no deprivation of a vested right, no due process analysis is required. (Bouley, supra, 127 Cal.App.4th at pp. 609-610.)
G.G. and B.M. cite the following language from Standard Oil Co. v. Feldstein (1980) 105 Cal.App.3d 590, 604 [164 Cal.Rptr. 403] (Standard Oil): "`In determining whether the right is fundamental the courts do not alone weigh the economic aspect of it, but the effect of it in human terms and the importance of it to the individual in the life situation . . . .'" They assert that the disclosure of their information on the Web site will impact them negatively in human terms. The quote in Standard Oil came from Bixby v. Pierno (1971) 4 Cal.3d 130 [93 Cal.Rptr. 234, 481 P.2d 242], in which the court noted the right to practice one's trade or profession is a vested right. The sentence immediately following the above-quoted sentence reads: "This approach finds its application in such an instance as the opportunity to continue the practice of one's trade or professiona right which induced this court's statement in 1939: `it necessarily follows that the court to which the application for mandate is made to secure the restoration of a professional license must exercise an independent judgment on the facts [as opposed to a substantial evidence review].'" (Id. at pp. 144-145, fn. omitted.)
(10) In contrast, this case does not involve licensing or a trade or profession. "A decision is authority only for the point actually passed on by the court and directly involved in the case. General expressions in opinions that go beyond the facts of the case will not necessarily control the outcome in a subsequent suit involving different facts." (Gomes v. County of Mendocino (1995) 37 Cal.App.4th 977, 985 [44 Cal.Rptr.2d 93]; see Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd. (1999) 19 Cal.4th 1182, 1195 [81 Cal.Rptr.2d 521, 969 P.2d 613].)

*1108 B

Ex Post Facto Law
(11) G.G. and B.M. next submit that the 2006 retroactivity provision constitutes an ex post facto law. Both the federal and state Constitutions prohibit ex post facto laws. (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9.) We interpret California's ex post facto clause no differently than its federal counterpart. (People v. Snook (1997) 16 Cal.4th 1210, 1220 [69 Cal.Rptr.2d 615, 947 P.2d 808].) "Thus, United States Supreme Court precedent not only controls the federal constitutional question, but also provides persuasive authority as to whether a statute is an ex post facto law under California law." (Ibid.)
(12) Our nation's high court described the ex post facto clause as follows in Beazell v. Ohio (1925) 269 U.S. 167, 169-170 [70 L.Ed. 216, 46 S.Ct. 68]: "It is settled . . . that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with [a] crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto." (Italics added & omitted; see also Collins v. Youngblood (1990) 497 U.S. 37, 42-43 [111 L.Ed.2d 30, 110 S.Ct. 2715] [reaffirming Beazell formulation]; People v. Snook, supra, 16 Cal.4th at pp. 1220-1221.) "Although the Latin phrase `ex post facto' literally encompasses any law passed `after the fact,' it has long been recognized . . . that the constitutional prohibition on ex post facto laws applies only to penal statutes which disadvantage the offender affected by them." (Collins v. Youngblood, supra, 497 U.S. at p. 41.)
In Smith v. Doe, supra, 538 U.S. 84, the court considered as a matter of first impression whether a sex offender registration and notification law constitutes retroactive punishment in violation of the ex post facto clause. The Alaska law requires persons convicted of aggravated sex offenses to register for life, and certain information is made available to the public on a Web site, including the offender's name, aliases, date of birth, address, physical description, photograph, place of employment, vehicle license and identification numbers, crime for which convicted, and length and conditions of sentence. (Id. at p. 91.)[6]
The court held the posting of such information is not punishment, and thus the Alaska law did not violate the ex post facto clause. The court determined the Legislature intended to create a civil scheme designed to protect the *1109 public from harm. (Smith v. Doe, supra, 538 U.S. at pp. 93-96.) The court then applied the factors outlined in Kennedy v. Mendoza-Martinez (1963) 372 U.S. 144, 168 [9 L.Ed.2d 644, 83 S.Ct. 554] (Mendoza-Martinez),[7] to determine whether the law is nonetheless punitive in its purpose or effect, and determined it is not. (Smith v. Doe, supra, at pp. 97, 105.) The court concluded the statutory scheme serves a legitimate nonpunitive object of public safety, which is advanced by alerting the public to the risk of sex offenders in their neighborhoods; does not involve a traditional means of punishment; does not impose any physical restraint; and is not excessive in its lifetime duration given the recidivism rate of child molesters. (Id. at pp. 97, 100-104.)[8]
Under the Smith v. Doe analysis, G.G. and B.M.'s ex post facto argument lacks merit. California law, which is substantively identical to Alaska law, also serves a protective rather than punitive purpose. In signing Assembly Bill No. 488 (2003-2004 Reg. Sess.), under which section 290.46 was enacted, Governor Schwarzenegger wrote: "`This bill represents a good first step in providing the most valuable tool we can give to parents to protect their children from sexual predatorsinformation. By providing sex offender information on the Internet, California will finally join the majority of other states that make this information accessible to parents and others.'" (Historical and Statutory Notes, 48 West's Ann. Pen. Code, supra, foll. § 290.46, p. 375, italics added.) In Smith v. Doe, supra, 538 U.S. at page 103, the court explained the "risk of recidivism posed by sex offenders is `frightening and high,'" and when they reenter society "`they are much more likely than any other type of offender to be rearrested'" for another sex crime. The inclusion on the Megan's Law Web site of information pertaining to persons guilty of serious sexual crimes against minors is reasonably related to a legitimate governmental purpose.
*1110 G.G. and B.M. assert the Legislature lacked a valid reason to rescind their exclusions from disclosure on the Web site. They point to information in the legislative history for the 2005 amendment that indicates recidivism rates for child molesters who victimized their own family members are lower than average. "While it may be of little comfort to a victim who has been abused by a parent or relative . . ., offenders who receive probation under Section 1203.066 appear to be at substantially lower risk than are other sexual offenders for re-offense . . . ." (Sen. Com. on Pub. Safety, Analysis of Assem. Bill No. 1323 (2005-2006 Reg. Sess.) as amended Apr. 13, 2005, p. Q, for hearing on June 14, 2005.)
(13) In Smith v. Doe, supra, 538 U.S. at pages 103-104, however, the court explained the ex post facto clause "does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences. We have upheld against ex post facto challenges laws imposing regulatory burdens on individuals convicted of crimes without any corresponding risk assessment. [Citations.] ... `Doubtless, one who has violated the criminal law may thereafter reform and become in fact possessed of a good moral character. But the legislature has power in cases of this kind to make a rule of universal application . . . .' [Citation.] (14) The State's determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not make the statute a punishment under the Ex Post Facto Clause." (See also Kasler v. Lockyer (2000) 23 Cal.4th 472, 481-482 [97 Cal.Rptr.2d 334, 2 P.3d 581], discussed below.)[9]

C

Equal Protection
G.G. was the uncle of his victim, and he contends section 290.46, subdivision (e)(2)(C) violates his right to equal protection by requiring that his information be posted on the Megan's Law Web site while allowing an exclusion for parents, stepparents, siblings and grandparents.
(15) Both the federal and state constitutions guarantee to all persons the "equal protection of the laws." (U.S. Const., 14th Amend., § 1; Cal. Const., art. I, § 7.) "`The first prerequisite to a meritorious claim under the equal protection clause is a showing that the state has adopted a classification that *1111 affects two or more similarly situated groups in an unequal manner.' [Citations.] This initial inquiry is not whether persons are similarly situated for all purposes, but `whether they are similarly situated for purposes of the law challenged.'" (Cooley v. Superior Court (2002) 29 Cal.4th 228, 253 [127 Cal.Rptr.2d 177, 57 P.3d 654].)
(16) "When a showing is made that two similarly situated groups are treated disparately, the court must then determine whether the government has a sufficient reason for distinguishing between them." (In re Brian J. (2007) 150 Cal.App.4th 97, 125 [58 Cal.Rptr.3d 246].) "`"[I]n areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonable conceivable state of facts that could provide a rational basis for the classification. [Citations.] Where there are `plausible reasons' for [the classification] `our inquiry is at an end.'" [Citations.] . . . [U]nder the rational relationship test, the state may recognize that different categories or classes of persons within a large classification may pose varying degrees of risk of harm, and properly may limit a regulation to those classes of persons as to whom the need for regulation is thought to be more crucial or imperative.'" (Kasler v. Lockyer, supra, 23 Cal.4th at pp. 481-482.)
(17) The party raising an equal protection challenge has the burden of establishing unconstitutionality. (Woods v. Horton (2008) 167 Cal.App.4th 658, 674 [84 Cal.Rptr.3d 332].) We conclude G.G. has not met his burden. Contrary to G.G.'s position, extended relatives such as aunts, uncles and cousins are not similarly situated to parents, stepparents, siblings and grandparents, because the latter group is more likely to live in the same home as a child victim of sexual abuse, and to have closer ties to the child. It appears the Legislature intended to preserve close family ties when possible, and the privacy of child victims, by not posting personal information on the Web site about the victims' closest relatives.
Even if the two groups were similarly situated, however, the limitation of the exclusion is rationally related to a legitimate governmental objective. Originally, the exclusion applied to any offender who successfully completed probation granted under section 1203.066. (§ 290.46, former subd. (e)(2)(C).) Section 1203.066 then allowed probation for certain sex offenses when "[t]he defendant is the victim's natural parent, adoptive parent, stepparent, relative, or is a member of the victim's household who has lived in the [victim's] household." (§ 1203.066, former subd. (c)(1).) To grant probation the court was also required to find it was in the child's best interest, rehabilitation of the defendant was feasible, and there would be no threat of physical harm to the child. Further, the defendant had to be removed from the child's home absent further court order. (§ 1203.066, former subd. (c)(2)-(5).)
*1112 The legislative history of the amendment to section 290.46, subdivision (e) reveals that the Legislature was concerned about equal protection challenges to the existing law, which "allow[ed] registrants who committed more serious child molestation offenses to obtain exclusion[s], while those who committed less serious offenses against family members (e.g., mere fondling), do not qualify for exclusion because probation was granted under . . . Section 1203, not . . . Section 1203.066." (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1323 (2005-2006 Reg. Sess.) as amended Apr. 13, 2005, p. 7, for hearing on Apr. 26, 2005.)
When analyzing the proposed amendment to section 290.46, subdivision (e), the Senate Committee on Public Safety (Senate Committee) recommended that the exclusion from disclosure on the Web site apply only to parents, stepparents, siblings and grandparents. The Senate Committee sought to balance the interests of narrowing the exclusion to protect the public and protecting children victimized by their closest relatives. (Sen. Com. on Pub. Safety, Analysis of Assem. Bill No. 1323 (2005-2006 Reg. Sess.) as amended Apr. 13, 2005, p. P, for hearing on June 28, 2005.) The analysis states: "Members may wish to consider whether an approach more narrowly crafted than current law would assure the public safety interests of Megan's Law without unnecessarily exposing families where little value in terms of enhanced public safety is likely to be gained. For example, an approach that specifically excludes all penetration offenses, including oral copulation, is limited only to cases involving a parent, stepparent, sibling or grandparent, and applies only to cases where probation has been granted and not violated, may promote and balance these interests. These types of true incest cases . . . are predicated on a closer familial relationship where the offender is more likely to live with the victim and recidivism rates are low." (Ibid., italics added.)
(18) We find no equal protection violation in limiting the exclusion to parents, stepparents, siblings and grandparents, as there is a rational basis for differentiating between them and more distant family members. "`"[T]he law need not be in every respect logically consistent with its aims to be constitutional. It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it."'" (Hernandez v. Department of Motor Vehicles (1981) 30 Cal.3d 70, 79 [177 Cal.Rptr. 566, 634 P.2d 917], citing Williamson v. Lee Optical Co. (1955) 348 U.S. 483, 487-488 [99 L.Ed. 563, 75 S.Ct. 461].) "Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. [Citation.] Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. [Citation.] The legislature may select one phase of one field and apply a remedy there, neglecting the others." (Williamson v. Lee Optical Co., supra, at p. 489.)

*1113 D

Liberty Interests
Additionally, G.G. and B.M. claim the posting of their personal information on the Megan's Law Web site infringes on their liberty interests in privacy and reputation without due process of law. They suggest they are entitled to a hearing to show they pose no current danger to the public.
The United States Supreme Court, however, has rejected this argument under a statutory scheme similar to California's. In Connecticut Dept. of Public Safety v. Doe (2003) 538 U.S. 1 [155 L.Ed.2d 98, 123 S.Ct. 1160], the issue was whether public disclosure on Connecticut's Megan's Law Web site of a registered offender's name, photograph and other identifying information, deprived him of a liberty interest in his reputation and violated the due process clause of the Fourteenth Amendment by depriving him of a hearing to determine whether he was currently dangerous. The court held that since the Connecticut Legislature based the registration and disclosure requirements on the fact of previous conviction, rather than current dangerousness, "even assuming, arguendo, that respondent has been deprived of a liberty interest, due process does not entitle him to a hearing to establish a fact that is not material under the Connecticut statute." (538 U.S. at p. 7.) As the court noted, when registration and disclosure is based on the fact of conviction, the "offender has already had a procedurally safeguarded opportunity to contest." (Ibid.) As registration and disclosure under California law is also based on the fact of conviction rather than current dangerousness, we find no constitutional violation.

III

Section 1203.4

A
B.M. contends that publication of his personal information on the Megan's Law Web site violates section 1203.4, under which his conviction was dismissed in 1997. The Department submits that B.M. forfeited review of the issue by not raising it at the trial court. As it is a pure issue of law, however, we nonetheless consider it.
(19) Section 1203.4, subdivision (a) "allows for probationers to have their convictions set aside and the accusations against them dismissed, and similarly provides that, with specified exceptions, such a defendant `shall *1114 thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted.'" (People v. Vasquez (2001) 25 Cal.4th 1225, 1228 [108 Cal.Rptr.2d 610, 25 P.3d 1090], italics added.) "`"A grant of relief under section 1203.4 is intended to reward an individual who successfully completes probation by mitigating some of the consequences of his conviction. . . ."'" (People v. Mgebrov (2008) 166 Cal.App.4th 579, 584 [82 Cal.Rptr.3d 778].) "However, such relief `"does not, properly speaking, `expunge' the prior conviction. The statute does not purport to render the conviction a legal nullity."'" (Ibid.)
A person convicted of a qualifying offense, such as B.M.'s must continue to register under section 290 notwithstanding a dismissal under section 1203.4. (§§ 290.007, 290.5.) B.M. does not challenge that requirement. Rather, he argues that publication of an offender's personal information on the Megan's Law Web site is a greater "disability" than registration alone because it "places them not only under the microscope of the police, but that of their neighbors and colleagues."
(20) "California decisions have established that the `penalties and disabilities' resulting from conviction, from which a probationer may be released pursuant to . . . section 1203.4, do not include nonpenal restrictions or qualifications imposed for public protection, such as licensing of attorneys [citation], physicians [citation], and vendors of alcoholic beverages [citation]; qualification for employment as a peace officer [citation]; and the regulation of participants in parimutuel wagering [citation]. [¶] Our courts have drawn a distinction between penalties imposed on a felon as further punishment for the crime, as to which vacation under . . . section 1203.4 generally affords relief, and nonpenal restrictions adopted for protection of public safety and welfare. `As used in section 1203.4 . . . the words "penalties and disabilities" have reference to criminal penalties and disabilities or to matters of a kindred nature.'" (People v. Vasquez, supra, 25 Cal.4th at pp. 1230-1231; see Copeland v. Dept. of Alcoholic Bev. Control (1966) 241 Cal.App.2d 186, 188 [50 Cal.Rptr. 452].)
(21) Further, United States Supreme Court precedent establishes that a retroactive measure requiring the disclosure of sex offender information on a Megan's Law Web site such as that required under California law is protective rather than punitive, and imposes no affirmative disability on the offender. (Smith v. Doe, supra, 538 U.S. at pp. 100, 104-106.) In Smith v. Doe, the court held that registration and disclosure on a Web site "are less harsh than the sanctions of occupational debarment, which [the court] ha[s] held to be nonpunitive. [Citations.] [That state's Megan's Law] does not restrain activities sex offenders may pursue but leaves them free to change jobs or residences." (Id. at p. 100.) The court rejected as conjecture the *1115 argument that the law was punitive because the stigma attached to sex crimes was likely to make registrants completely unemployable and preclude them from finding housing. (Ibid.) The court explained that "[a]lthough the public availability of the information may have a lasting and painful impact on the convicted sex offender, these consequences flow not from [that state's Megan's Law]'s registration and dissemination provisions, but from the fact of conviction, already a matter of public record. The State makes the facts underlying the offenses and the resulting convictions accessible so members of the public can take the precautions they deem necessary before dealing with the registrant." (Id. at p. 101.)
Accordingly, we conclude B.M.'s position lacks merit.

B
In his reply brief, B.M. asserts for the first time that the Web site dissemination of his information violates his constitutional rights of liberty and procedural due process, since his conviction was dismissed under section 1203.4. He relies on Doe v. State, Dept. of Public Safety (Alaska 2004) 92 P.3d 398, in which the Alaska Supreme Court was confronted with the narrow issue of whether that state's Sex Offender Registration Act, when applied to an offender whose conviction was set aside before its enactment, violated his state constitutional liberty and due process rights. The court answered the question in the affirmative, and found the state was thus required to have a compelling reason to apply the Sex Offender Registration Act to him, which it did not demonstrate. (Id. at pp. 411, 412.)
(22) An appellant, however, forfeits an issue by failing to raise it in his or her opening brief. (People v. Zamudio (2008) 43 Cal.4th 327, 353-354 [75 Cal.Rptr.3d 289, 181 P.3d 105]; California Recreation Industries v. Kierstead (1988) 199 Cal.App.3d 203, 205, fn. 1 [244 Cal.Rptr. 632].) "`Obvious considerations of fairness in argument demand that the appellant present all of his points in the opening brief. To withhold a point until the closing brief would deprive the respondent of his opportunity to answer it or require the effort and delay of an additional brief by permission. (23) Hence the rule is that points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before.... [Citations.]'" (Neighbours v. Buzz Oates Enterprises (1990) 217 Cal.App.3d 325, 335, fn. 8 [265 Cal.Rptr. 788].) B.M. has made no showing as to why he could not have raised the issue in his opening brief, and thus we deem it abandoned.

*1116 DISPOSITION
The judgment is affirmed. The Department is entitled to costs on appeal.
Nares, J., and McIntyre, J., concurred.
NOTES
[1] "Megan's Law" is named after Megan Kanka, a seven-year-old New Jersey girl who was sexually assaulted and murdered in 1994 by a neighbor who, unknown to her family, had prior convictions for sex offenses against children. As a result of the crime, by 1996 each state, the District of Columbia and the federal government had enacted some version of Megan's Law, requiring the registration of sex offenders and community notification. (Smith v. Doe (2003) 538 U.S. 84, 89 [155 L.Ed.2d 164, 123 S.Ct. 1140].)
[2] We discuss legal principles in this section as necessary to place the facts in context.
[3] All undesignated statutory references are to the Penal Code.
[4] Currently, section 1203.066, subdivision (d)(1)(A) allows probation for "a member of the victim's household."
[5] The record does not reveal whether G.G.'s lewd and lascivious act involved the type of contact that would disqualify him from obtaining an exclusion regardless of his familial relationship with his victim.
[6] California, unlike Alaska, does not publish the name of the offender's employer.
[7] As relevant to Smith v. Doe, the factors "are whether, in its necessary operation, the regulatory scheme: has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has a rational connection to a nonpunitive purpose; or is excessive with respect to this purpose." (Smith v. Doe, supra, 538 U.S. 84, 97.)
[8] The California Supreme Court has relied on the Mendoza-Martinez factors in holding the sex offender registration law (§ 290) is not punishment for purposes of ex post facto analysis or the prohibition against cruel and unusual punishment. (People v. Castellanos (1999) 21 Cal.4th 785, 796 [88 Cal.Rptr.2d 346, 982 P.2d 211].) In In re Alva (2004) 33 Cal.4th 254, 280 [14 Cal.Rptr.3d 811, 92 P.3d 311], the court relied on Smith v. Doe in reaffirming "the registration requirement imposed by section 290 is not punishment, but a legitimate, nonpunitive regulatory measure." In People v. Presley (2007) 156 Cal.App.4th 1027, 1035 [67 Cal.Rptr.3d 826], the court relied on Smith v. Doe in holding the public notice requirements of California's sex offender registration (§ 290) do not constitute punishment for purposes of the Sixth Amendment.
[9] Our holding on the ex post facto issue also resolves G.G. and B.M.'s argument that the 2006 amendment to section 290.46, subdivision (e) violates the rule against bills of attainder. "`A bill of attainder is a legislative act which inflicts punishment without a judicial trial.'" (United States v. Lovett (1946) 328 U.S. 303, 315 [90 L.Ed. 1252, 66 S.Ct. 1073].)