Filed 4/17/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| LUCINDA COX,<br><br>        Plaintiff and Appellant,<br><br>        v.<br><br>HOLLIS GRIFFIN,<br><br>        Defendant and Respondent. | D074893<br><br><br>(Super. Ct. No. CIVDS1518147) |

APPEAL from a judgment of the Superior Court of San Bernardino County, Janet M. Frangie, Judge.  Affirmed; request for judicial notice denied.

Law Offices of Keith B. Bardellini, Keith B. Bardellini; Drinker Biddle & Reath, George T. Caplan and Paul M. Gelb for Plaintiff and Appellant.

Law Office of John M. Kramer, John M. Kramer; Law Offices of Kristen Martin and Kristen Martin for Defendant and Respondent.

The lesson in this case is there are important distinctions between the torts of false imprisonment and malicious prosecution.  Lucinda Cox alleged that Hollis Griffin intentionally filed a false police report accusing Cox of forgery and embezzlement, leading to Cox's arrest and seven-day incarceration.  Cox's attorney asked the court to

instruct the jury on false arrest (false imprisonment) and intentional infliction of emotional distress. Cox's complaint did not allege a cause of action for malicious prosecution, and the court did not instruct on malicious prosecution.

After the jury awarded Cox $450,000 in a general verdict, the trial court granted Griffin's motion for judgment notwithstanding the verdict (JNOV) because under *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350 (*Hagberg*), citizen reports of suspected criminal activity can only be the basis for tort liability on a malicious prosecution theory. (*Id.* at pp. 355.) When a citizen contacts law enforcement to report a suspected crime, the privilege in Civil Code[1] section 47, subdivision (b) (hereafter section 47(b)) bars causes of action for false imprisonment and intentional infliction of emotional distress, even if the police report was made maliciously. (*Mulder v. Pilot Air Freight* (2004) 32 Cal.4th 384, 387 (*Mulder*); *Hagberg*, at p. 365.)

In sum, Cox prevailed on causes of action barred by section 47(b), and she failed to allege and have the jury instructed on her only potentially viable cause of action, malicious prosecution.

Cox's only argument in her opening brief is that the JNOV should be reversed because "the elements of malicious prosecution were supported by substantial evidence in the record." We reject Cox's argument because an appellant "cannot challenge a judgment on the basis of a new cause of action [she] did not advance below." (*United*

---

[1]     All statutory references are to the Civil Code.

*States Golf Assn. v. Arroyo Software Corp.* (1999) 69 Cal.App.4th 607, 623 (*United States Golf.*)   There is an exception to that rule allowing a change in theory on appeal if the new theory involves a question of law on undisputed facts.  But that exception does not apply here because the record does not contain undisputed evidence establishing all elements of malicious prosecution.  Accordingly, although the jury found that Griffin intentionally filed a false police report causing Cox emotional distress, we are compelled to affirm the defense judgment.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

A.  *Business Disputes*

In 2008 Cox and Griffin, who had been friends for over 20 years, opened a cosmetology school together.  Cox was one of the school's teachers and Griffin handled administration.

In 2010 Cox and Griffin had numerous business disagreements, causing them to sell the school in 2012.  To pay final expenses Cox opened a checking account in July 2012 that required both of their signatures on checks.  When the account was opened, the bank provided three checks, which Cox and Griffin signed in blank; i.e., with no payee, no date, and no amount.  Cox used two of the checks to pay small invoices and kept the third blank check for future use.  Griffin testified that she understood Cox would use that third check to pay a $20 invoice.

---

2    Cox's opening brief has a one-page statement of facts.  Griffin's brief has a five-line statement of facts.  The factual background in this opinion is, therefore, largely based on this court's independent review of the record.

3

B. *The $35,200 Check*

About seven months later, in February 2013, Cox issued the remaining presigned blank check to herself for $35,200, essentially depleting the joint account.

Cox testified that Griffin had no further interest in the business and told Cox to take the money to pay the school's debts. Cox also testified that she disbursed the $35,200 to pay the school's debts and did not keep "a single dime" for herself.

Griffin disagreed, testifying that she never authorized Cox to issue herself a $35,200 check. In September 2013 Griffin sent Cox an e-mail asking her to explain how this money was taken out of the joint account "without [her] signature" and "[c]an you please tell [me] what is going on?" Cox did not reply.

C. *Griffin's Crime Report and Cox's Arrest*

In October 2013 Griffin reported to the San Bernardino County Sheriff's Department that Cox had forged her signature on the $35,200 check. The sheriff's department investigated and a warrant was issued for Cox's arrest.

Griffin has law enforcement contacts. Her husband works for a district attorney's office. Griffin also owns a gun shop, sold firearms to the deputy who took the crime report, and knows the detective assigned to investigate her criminal complaint.

The detective asked Griffin to notify the sheriff's department if she saw Cox. On December 23, 2014, at about 8 p.m., Griffin and her husband reported that Cox was at a

4

residence owned by one of Cox's clients.[3]  A deputy arrested Cox there and later booked her into jail on Christmas Eve.  Cox was unable to raise her $250,000 bail and spent several days in jail with only a thin mat for a bed.[4]  She was "freezing cold" and except for an apple each day, Cox ate nothing because "[e]verything else was either very sloppy or inedible."  Cox feared for her life, heard people screaming "day and night," and saw rats outside her cell.

At trial, Griffin acknowledged that Cox had not forged her signature on the $35,200 check.  Griffin testified that when she contacted police in October 2013, she had forgotten that seven months earlier she had signed the blank check.  Griffin testified that although the check was not forged, it was fraudulent because Cox wrongfully used Griffin's share of the $35,200 to pay Cox's personal expenses.

An accountant testified that as a result of errors in the school's tax returns, Griffin received tax benefits at Cox's expense.  In closing argument, Cox's attorney argued that Griffin sought to chill Cox's attempts to file amended tax returns by making a false police report about the $35,200 check.

---

[3]     Cox testified that Griffin knew she was regularly at that client's house "for many years on a certain day of the week"—from which the jury could infer that Griffin planned the arrest to occur near Christmas.

[4]     In closing argument, Cox's lawyer stated, "[N]o one has been able to explain how the bail was at $250,000 except strangely [Griffin's] husband worked at the [district attorney's] office that sets the bail."

D. *Procedural History*

In December 2015 Cox filed a form complaint against Griffin containing one cause of action entitled "Intentional Tort," alleging:

> "Hollis Griffin, knowingly and intentionally, filed a false police report for the purpose of causing the false incarceration of Plaintiff, Lucinda Cox, alleging that the Plaintiff had committed a forgery and had embezzled money from Hollis Griffin and did it for the purpose of causing Plaintiff, Lucinda Cox, to be unlawfully and intentionally incarcerated. On December 23, 2014, on the basis of the false police report filed by Hollis Griffin, Plaintiff Cox was arrested and incarcerated for 7 days, causing extreme emotional distress, loss of wages, medical and physical injuries and loss of earning capacity."

During trial, the court granted Cox's motion to amend the complaint to conform to proof to add a cause of action for intentional infliction of emotional distress. The record does not indicate that Cox sought to amend the complaint to add a malicious prosecution cause of action.

Cox's attorney asked the court to instruct on (1) intentional infliction of emotional distress and (2) false arrest with warrant. On the false arrest cause of action, the court instructed the jury as follows:

> "Plaintiff Lucinda Cox claims that she was wrongfully arrested by the San Bernardino County Sheriff's department as a result of a false police report filed by the Defendant Hollis Griffin. To establish this claim, Plaintiff must prove all of the following:
>
> "1. That Hollis Griffin intentionally caused Lucinda Cox to be wrongfully arrested;
>
> "2. That Hollis Griffin intentionally filed a false police report that lead directly to incarceration of Lucinda Cox;
>
> "3. That Lucinda Cox[] was harmed; and

6

"4. That Hollis Griffin's conduct was a substantial factor in causing Lucinda Cox'[s] harm."[5]

In closing argument, Cox's attorney told the jury, "So we have two causes of action . . . intentional infliction of emotional distress [and] . . . false arrest." In his rebuttal closing, Cox's attorney reiterated that "[t]his case is about false arrest, false imprisonment, and intentional infliction of emotional distress."[6]

The jury returned a general verdict in Cox's favor for $450,000. After the court entered judgment on the verdict, Griffin filed a JNOV motion asserting that under *Hagberg*, *supra*, 32 Cal.4th 350, section 47(b) "provides an absolute privilege for statements made to law enforcement personnel to report suspected criminal activity . . . and the only basis of tort liability possibly available is . . . a cause of action for malicious prosecution." Additionally, Griffin asserted insufficient evidence supported a malicious prosecution claim. Griffin also asked the court to take judicial notice of an order stating that Cox was held to answer for two counts after her preliminary hearing.[7]

Cox opposed the JNOV motion, asserting that section 47(b) did not immunize "intentionally false statements to law enforcement." In reply, Griffin again cited

---

5      We express no opinion on the correctness of this instruction; that issue has not been raised and is not before us.

6      False arrest and false imprisonment are the same tort. False arrest is a way of committing false imprisonment. (*Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1049, fn.6.) Cox's attorney referred to this tort as false arrest and, at other times, as false imprisonment. We refer to it only as false imprisonment.

7      We are unable to find a ruling on this request for judicial notice.

*Hagberg*, *supra*, 32 Cal.4th 350, stating that the privilege "cannot be defeated by a showing of malice."

After conducting a hearing, the court granted the JNOV motion, ruling that section 47(b) "provides a complete defense to Cox's causes of action." Cox appealed from the defense judgment.

DISCUSSION

I.  *THE COURT CORRECTLY ENTERED JNOV*

A.  *No Forfeiture from Designation of Reporter's Transcript*

An appellant who elects to proceed with a reporter's transcript may choose to designate less than all the testimony given in the superior court. However, if the appellant does so, the designation must state the points to be raised on appeal, and the appeal is "then limited to those points unless, on motion, the reviewing court permits otherwise." (Cal. Rules of Court,[8] rule 8.130(a)(2).)

In Cox's amended notice designating the record, she identified the proceedings to be included in the reporter's transcript and checked the box indicating that the proceedings so designated "do not include all of the testimony in the superior court." Cox specified the issue to be raised on appeal as: "[I]ntentional misrepresentations are not covered by [section] 47(b)."

In her opening brief, Cox asserts that section 47(b) does not bar an action for malicious prosecution, and "the elements of malicious prosecution were supported by

_____

[8]      Citations to rules are to the California Rules of Court.

8

substantial evidence in the record."  This is not the issue Cox specified in her record designation.  Moreover, Cox has not brought a motion to raise appellate issues not identified in her designation.  Griffin argues that as a result Cox has forfeited the malicious prosecution issue raised in the opening brief.

Cox's reply brief does not address this argument.  An appellate court is not required to make arguments for parties.  (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.)  Nevertheless, our review of the record shows that although Cox's trial attorney checked the box indicating that the proceedings designated did not include all of the trial testimony, this was apparently a misunderstanding because counsel designated all the trial testimony in the amended designation of record.[9]

Because we discovered this on our own, we asked the parties to submit supplemental briefs addressing this question.  Cox's brief states that the reporter's transcript contains all the testimony given in the superior court.  Griffin's attorneys state they do not know because they did not purchase a copy of the reporter's transcript.  Because the reporter's transcript contains all the testimony given in the superior court, we reject Griffin's forfeiture argument and turn to the merits.

---

[9]     Cox designated proceedings occurring on February 7, 8, 9, and 10.  Cox testified on February 7 and 8.  Griffin testified beginning in the afternoon on February 8.  Griffin's testimony was interrupted on February 9 for the testimony of Deputy Robert Oakleaf.  Karl Anderson testified on February 9.  Griffin's testimony resumed on February 9.  Cox testified again on February 9.  All of this testimony is in the reporter's transcript Cox designated.  The clerk's minutes are consistent with this and do not list any other person as having testified.

9

B. *Distinctions Between False Imprisonment and Malicious Prosecution*

There are important distinctions between the intentional torts of false imprisonment and malicious prosecution. The elements of a cause of action for false imprisonment are (1) an arrest without legal process, (2) imprisonment, and (3) damages. (*Ramsden v. Western Union* (1977) 71 Cal.App.3d 873, 879.) "[T]he provocation, motive and good faith of the defendant are irrelevant to pleading a cause of action for false imprisonment." (*Wilson v. Houston Funeral Home* (1996) 42 Cal.App.4th 1124, 1135.)

In contrast, malicious prosecution is procuring the prosecution of another under lawful process, but from malicious motives and without probable cause. Unlike false imprisonment, malice and lack of probable cause, plus a favorable termination of the proceedings on the merits, are the gist of the action for malicious prosecution. (*Singleton v. Perry* (1955) 45 Cal.2d 489, 494; *Lane v. Bell* (2018) 20 Cal.App.5th 61, 63-64 (*Lane*).)

"False imprisonment and malicious prosecution are mutually inconsistent torts . . . . In a malicious criminal prosecution, the detention was malicious but it was accomplished properly, i.e., by means of a procedurally valid arrest. In contrast, if the plaintiff is arrested pursuant to a procedurally improper warrant or warrantless arrest, the remedy is a cause of action for false imprisonment." (*Cummings v. Fire Ins. Exchange* (1988) 202 Cal.App.3d 1407, 1422.)

C. *Section 47(b) Privilege*

Section 47(b) provides that a statement made "[i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable [by writ of mandamus]" is privileged, with certain exceptions that are inapplicable here. (*Hagberg*, *supra*, 32 Cal.4th at p. 360.) This privilege applies even if the statement was false and made with malice. (*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 955-956 [privilege applies even to civil actions based on perjury].) "[T]he only tort claim . . . falling outside the privilege established by section 47(b) is malicious prosecution." (*Hagberg*, *supra*, 32 Cal.4th at p. 361.)

"[T]he absolute privilege established by section 47(b) serves the important public policy of assuring free access to the courts and other official proceedings. It is intended to '"assure utmost freedom of communication between citizens and *public authorities whose responsibility is to investigate and remedy wrongdoing*."' (*Silberg* [*v. Anderson* (1990)] 50 Cal.3d [205,] 212, italics added.) . . . Hence, without respect to the good faith or malice of the person who made the statement, or whether the statement ostensibly was made in the interest of justice, 'courts have applied the privilege to eliminate the threat of liability for communications made during all kinds of truth-seeking proceedings: judicial, quasi-judicial, legislative and other official proceedings.'" (*Hagberg*, *supra*, 32 Cal.4th. at pp. 360-361.)

Particularly relevant here, "citizen reports of suspected criminal activity to law enforcement personnel enjoy an absolute privilege of immunity from civil liability under

11

section 47(b)." (*Kesmodel v. Rand* (2004) 119 Cal.App.4th 1128, 1135.) Such reports, designed to instigate or prompt an investigation, can only be the basis for tort liability if the plaintiff can establish the tort of malicious prosecution. (*Hagberg*, *supra*, 32 Cal.4th at pp. 355, 370.)

Implementing section 47(b), the California Supreme Court has held that this privilege applies to false imprisonment and intentional infliction of emotional distress—the only causes of action Cox pleaded and the only theories of liability upon which the court instructed Cox's jury. (*Hagberg*, *supra*, 32 Cal.4th at p. 375 [rejecting the argument that false imprisonment should be an exception to section 47(b) immunity].)

*Mulder*, *supra*, 32 Cal.4th 384 is also illustrative. There, the defendant contacted the police and reported that the plaintiff possessed a stolen flight recorder. (*Id*. at p. 386.) After the police detained, handcuffed, and searched the plaintiff, the plaintiff sued for false imprisonment and intentional infliction of emotional distress. (*Ibid*.) The plaintiff in *Mulder* further alleged that the defendants "had been motivated by malice" when they supplied the information that was the basis for his arrest. (*Ibid*.) The court held that section 47(b) barred these claims. (*Mulder*, at p. 387.)

D. *Cox Is Precluded from Changing Theories on Appeal*

In her opening brief, Cox does *not* contend that the trial court erred in determining that section 47(b) provided a complete defense to the only causes of action she alleged: false imprisonment and intentional infliction of emotional distress. Instead, Cox argues that the trial court erred because there was substantial evidence that Griffin committed a *different tort*—malicious prosecution—which is not barred by section 47(b). Cox asserts,

12

"[T]he privilege under [s]ection 47(b) did not render the jury's verdict contrary to law because all of the elements of malicious prosecution were clearly present."

Cox's argument is untenable. We cannot reverse the judgment on a theory of malicious prosecution that Cox did not litigate in the trial court. "'As a general rule . . . appealing parties must adhere to the theory (or theories) on which their cases were tried.'" (*P&D Consultants, Inc. v. City of Carlsbad* (2010) 190 Cal.App.4th 1332, 1344.) "'"A party is not permitted to change [her] position and adopt a new and different theory on appeal. To permit [her] to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant."'" (*Vasquez v. SOLO 1 Kustoms, Inc.* (2018) 27 Cal.App.5th 84, 96 (*Vasquez*) [case tried on alleged violation of the Automotive Repair Act; on appeal plaintiff cannot seek to uphold the judgment on unjust enrichment or wrongful possession theories].) An appellant "cannot challenge a judgment on the basis of a new cause of action [she] did not advance below." (*United States Golf, supra,* 69 Cal.App.4th at p. 623.)

Despite this general rule, courts have discretion to consider a new theory on appeal if it involves a legal question based on undisputed facts. (*Vasquez, supra*, 27 Cal.App.5th at p. 96.) Invoking this exception, Cox asserts that "all of the facts essential to the issue of whether the plaintiff can establish the elements of the tort of malicious prosecution are undisputed." In a related argument made in her reply brief, Cox contends that in granting

13

the JNOV motion, the trial court made "finding[s]" that "contain[] all of the elements of malicious prosecution . . . ."[10]

Cox's argument fails because facts essential to establishing malicious prosecution were not in evidence at trial, nor were they the subject of any "findings" made by the trial court. For example, "[f]avorable termination 'is an essential element of the tort of malicious prosecution, and it is strictly enforced.'" (*Lane*, *supra*, 20 Cal.App.5th at p. 68.) The core concept is that the termination must reflect on the *merits* of the prior action. (*Warren v. Wasserman, Comden & Casselman* (1990) 220 Cal.App.3d 1297, 1301.)

Cox contends undisputed evidence establishes favorable termination of the criminal charges filed against her. She asserts, "In July 2015, after nine hearings, the criminal judge dismissed the criminal case against Cox." However, there was no evidence at trial that the criminal charges against Cox were dismissed, much less evidence that the dismissal reflected on Cox's innocence. Moreover, Cox cites nothing in the order granting the JNOV where the court made any finding that there had been a favorable termination.

---

10    The so-called "finding[s]" to which Cox refers are not findings. In granting the JNOV motion, the court summarized evidence supporting the verdict, stating, "Cox's theory of liability against Griffin, and the jury's verdict was based upon the evidence presented that she was the victim of a false report by Griffn [*sic*] to the police and, as a result, was arrested and incarcerated which incarceration subjected her to extreme emotional distress. In contacting the police Griffin knowingly and intentionally accused Cox falsely of forgery and embezzlement."

To support her assertion that there was a favorable termination of the criminal charges, Cox cites pages 9 and 423 of the reporter's transcript and page 530 of the clerk's transcript. However, page 9 is Cox's attorney's opening statement that "low [*sic*] and behold the whole case got dismissed." Opening statement "is not evidence, and no jury would accept it as facts proved." (*People v. Arnold* (1926) 199 Cal. 471, 486.) Page 423 is Cox's attorney's closing argument, where he stated that Cox was arrested "for something [she] didn't do that was dismissed . . . ." However, "'[i]t is axiomatic that argument is not evidence.'" (*People v. Stanley* (2006) 39 Cal.4th 913, 961, fn. 10.) Moreover, Griffin's lawyer's objected during closing argument, stating that the dismissal of criminal charges was "not presented to the jury." The court sustained that objection. Page 530 of the clerk's transcript is within trial exhibit 9, a document written by Cox's attorney stating the court dismissed the criminal charges for insufficient evidence. However, that exhibit was not received in evidence.[11]

Even assuming for the sake of argument that there was admissible evidence that the criminal charges against Cox were dismissed, "[i]t is not enough, however, merely to show that the proceeding was dismissed." (*Jaffe v. Stone* (1941) 18 Cal.2d 146, 150.) If a dismissal "is of such a nature as to indicate the innocence of the accused, it is a favorable termination sufficient to satisfy the requirement. If, however, the dismissal is

---

[11]    Although not cited by Cox, in closing argument Griffin's lawyer conceded the criminal case had been dismissed. However, he also stated that the dismissal was "for whatever reason" and not because the crime report was false.

on technical grounds, for procedural reasons, or for any other reason not inconsistent with [her] guilt, it does not constitute a favorable termination." (*Ibid*.) Thus, "[w]hen the proceeding terminates other than on the merits, the court must *examine the reasons for termination* to see if the disposition reflects the opinion of the court or the prosecuting party that the action would not succeed." (*Susag v. City of Lake Forest* (2002) 94 Cal.App.4th 1401, 1411, italics added.) Cox cites no evidence indicating the reason(s) for the dismissal, and thus she cannot establish favorable termination as a matter of law. (*Doe v. San Diego-Imperial Council* (2017) 16 Cal.App.5th 301, 315.) Accordingly, Cox's malicious prosecution theory, raised for the first time on appeal, is forfeited.[12]

Disagreeing with this analysis, Cox cites *Van Audenhove v. Perry* (2017) 11 Cal.App.5th 915 (*Van Audenhove*) for the proposition that a "lawful warrant constitutes a proceeding for purposes of the elements of malicious prosecution." Cox contends it was undisputed that she was arrested "pursuant to a warrant" and, because the criminal charges were ultimately dismissed, "the underlying arrest warrant was terminated in her favor."

---

[12] Implicitly acknowledging that there was no evidence at trial that her criminal charges were dismissed, on appeal Cox requests that this court take judicial notice of online docket entries in her criminal action stating the charges were "dismissed." Cox concedes these documents were not presented to the trial court. The request for judicial notice is denied. "Reviewing courts generally do not take judicial notice of evidence not presented to the trial court." (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.) Moreover, as discussed in the text, absent evidence establishing that the dismissal reflects on Cox's innocence (and there is none), evidence of the dismissal is not relevant. (*AL Holding Co. v. O'Brien & Hicks, Inc.* (1999) 75 Cal.App.4th 1310, 1313, fn. 2 [no judicial notice of irrelevant matters].)

16

This argument fails because it is based on a misunderstanding of *Van Audenhove*, *supra*, 11 Cal.App.5th 915. In *Van Audenhove*, there was no arrest warrant and no criminal prosecution. Rather, after police arrested the plaintiff and jailed him overnight, the district attorney declined to prosecute. (*Id*. at p. 917.) The issue on appeal was whether the arrest *alone* satisfied the "prosecution" element of malicious prosecution. (*Id*. at p. 919.) The court held that an arrest without formal charges is not a prosecution for purposes of a civil action for malicious prosecution, at least when the arrest is not pursuant to a warrant. (*Id*. at p. 917.) *Van Audenhove* does not address the distinct issue here, whether the dismissal of charges against Cox after her arrest satisfies the "favorable termination" element. An opinion is not authority for propositions it does not consider. (*Vasquez*, *supra*, 27 Cal.App.5th at p. 95.)

Furthermore, Cox's new malicious prosecution theory also fails because "in most cases, a person who merely alerts law enforcement to a possible crime . . . is not liable if[] law enforcement, on its own, after an independent investigation, decides to prosecute." (*Williams v. Hartford Ins. Co.* (1983) 147 Cal.App.3d 893, 898.) Griffin testified that she intended the sheriff's department to investigate what she believed to be a crime. The sheriff's department conducted its own investigation. After a preliminary hearing, Cox was held to answer two charges. On this record, there is at least a triable issue of whether the independent investigation defense—which was never presented to the jury—would have defeated a malicious prosecution claim. Accordingly, Cox cannot establish malicious prosecution as a matter of law on undisputed facts, and thus we cannot consider her new theory for the first time on appeal. (*Tanguilig v. Neiman*

17

*Marcus Group, Inc.* (2018) 22 Cal.App.5th 313, 330 ["an appellant may not raise a new theory on appeal when the theory rests on facts that were either controverted or not fully developed in the trial court"].)

Additionally, where, "as here, the claim of malicious prosecution is based upon initiation of a criminal prosecution, the question of probable cause is whether it was objectively reasonable for the defendant to suspect the plaintiff had committed a crime. (*Ecker v. Raging Waters Group, Inc.* (2001) 87 Cal.App.4th 1320, 1330.) To the extent this issue was developed at trial, the evidence was conflicting. Cox testified that Griffin told her to issue the $35,200 check to herself because Griffin had no further interest in the business and wanted Cox to pay remaining business debts. In contrast, Griffin testified that she signed the blank check in July 2012 because Cox told her she intended to use it to pay a vendor $20. Thus, on this element as well, the evidence was not undisputed and, therefore, we cannot consider Cox's change in theory for the first time on appeal. "As the [California] Supreme Court has observed, the rule against changing the theory on which a case was tried 'is to be stringently applied when the new theory depends on controverted factual questions whose relevance thereto was not made to appear at trial.'" (*Schellinger Brothers v. Cotter* (2016) 2 Cal.App.5th 984, 996.)

E.  *No New Arguments in Reply Brief*

For the first time in her reply brief, Cox asserts that Griffin waived the litigation privilege defense by not raising it until the JNOV motion. However, Cox has forfeited this issue by failing to raise it in her opening brief. ""Obvious considerations of fairness in argument demand that the appellant present all of [her] points in the opening brief. To

18

withhold a point until the closing brief would deprive the respondent of [her] opportunity to answer it or require the effort and delay of an additional brief by permission.  Hence the rule is that points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before."'"  (*Doe v. California Dept. of Justice* (2009) 173 Cal.App.4th 1095, 1115 (*Doe*).)  Cox does not explain why she could not have raised the issue in her opening brief, and thus we deem it abandoned.

Additionally, Cox's waiver argument is contained in the section of her reply brief entitled "Introduction."  This violates rule 8.204(a)(1)(B), which requires a brief to state each point "under a separate heading or subheading."  Her point is forfeited for this additional reason as well.  (*Opdyk v. California Horse Racing Bd.* (1995) 34 Cal.App.4th 1826, 1830, fn. 4.)

Also for the first time in the reply, Cox asserts that a JNOV was improper because if Griffin had moved for a directed verdict on the same grounds, that motion would have been denied.  Again, however, Cox does not explain why she failed to raise this in her opening brief.  Accordingly, the point is forfeited.  (*Doe*, *supra*, 173 Cal.App.4th at p. 1115.)

DISPOSITION

The judgment is affirmed.

NARES, J.

WE CONCUR:

HUFFMAN, Acting P. J.

O'ROURKE, J.

20