Filed 3/26/26

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re E.J., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> E.J., <br><br> Defendant and Appellant. | E085903 <br><br> (Super.Ct.No. J275415) <br><br> OPINION |

APPEAL from the Superior Court of San Bernardino County. Candice Garcia-Rodrigo, Judge. Affirmed.

Jo Pastore, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant General, Arlene A. Sevidal, Assistant Attorney General, Donald W. Ostertag and Joseph C. Anagnos, Deputy Attorneys General, for Plaintiff and Respondent.

## I.  INTRODUCTION

In 2018, E.J. was declared a ward of the juvenile court after admitting to committing an assault with a deadly weapon other than a firearm (Pen. Code,[1] § 245, subd. (a)(1)).  In 2025, he filed a motion seeking to terminate the probation condition prohibiting his possession of a firearm imposed pursuant to section 29820.  The juvenile court denied the motion, and E.J. appeals, asserting that section 29820 is facially unconstitutional under the United States Constitution.  We conclude that section 29820 is facially valid and affirm the order.

## II.  BACKGROUND

In 2018, a juvenile wardship petition was filed pursuant to Welfare and Institutions Code section 602, subdivision (a), alleging that E.J. committed numerous offenses in violation of the Penal Code.  After reaching a negotiated disposition, E.J. admitted to a single count of assault with a deadly weapon other than a firearm (§ 245, subd. (a)(1)).  The juvenile court found the admitted allegations true, dismissed the remaining allegations in the petition, and declared E.J. a ward of the juvenile court.  It ordered E.J. to serve 38 days in juvenile hall, awarded him credit for time served, and placed him on probation.

In 2019, the juvenile court reduced E.J.'s offense from a felony to a misdemeanor, terminated E.J.'s probation, discharged E.J. as a ward of the juvenile court, and sealed the record of proceedings.

---

[1]  Undesignated statutory references are to the Penal Code.

In February 2025, E.J. filed a motion seeking to terminate the firearm prohibition imposed pursuant to section 29820. The juvenile court denied the motion, and E.J. appeals from the order denying his motion.

## III. DISCUSSION

The only argument asserted in E.J.'s appeal is that section 29820 is facially unconstitutional. Specifically, E.J. argues that the statute: (1) violates the Second Amendment of the United States Constitution (Second Amendment) because it does not conform to the nation's historical tradition of firearm regulation; (2) violates the Second Amendment because it prohibits firearm possession based solely on age as a proxy for dangerousness; and (3) violates the Fourteenth Amendment of the United States Constitution (Fourteenth Amendment) by failing to provide due process in the form of a mechanism for individualized assessment of his dangerousness to justify a firearm prohibition. As we explain, we disagree with each of these arguments.

### A. *General Legal Principles and Standard of Review*

"Under Penal Code section 29820, a minor adjudged a ward of the juvenile court for certain offenses . . . shall be prohibited until age 30 from possessing firearms." (*In re M.A.* (2022) 83 Cal.App.5th 143, 147; § 29820, subd. (a)(1)(G), footnote omitted.) "[T]he firearms prohibition under section 29820 . . . is self-executing and independent of the juvenile court's authority to impose conditions of probation." (*In re M.A.*, at p. 148.) "The prohibition is a mandatory consequence of (1) the true finding as to a predicate offense and (2) the ensuing wardship disposition. . . . The juvenile court's duty under

3

section 29820 is merely the ministerial duty to '*notify* the [Department of Justice] of persons subject to this section.' " (*Ibid.*)

E.J. concedes that a violation of section 245, subdivision (a)(1), triggers the firearm prohibition set forth in section 29820. He argues only that the statute itself is facially unconstitutional. " 'The interpretation of a statute and the determination of its constitutionality are questions of law. In such cases, appellate courts apply a de novo standard of review.' " (*People v. Alexander* (2023) 91 Cal.App.5th 469, 474 (*Alexander*); *People v. Roberts* (2025) 114 Cal.App.5th 187, 193.) " 'Typically, a litigant may challenge the constitutionality of a statute in two ways: on its face or as applied.' . . . [¶] 'A facial challenge seeks to void the statute as a whole by showing that " 'no set of circumstances exists under which the [statute] would be valid,' i.e. that the law is unconstitutional in all" ' . . . or at least the ' " 'great majority of cases. ' " ' " (*Roberts*, at p. 193.) "When reviewing a facial challenge to a statute, we 'consider . . . only the text of the measure itself, not its application to the particular circumstances of an individual.' " (*Ibid.*)

B. *The Firearm Restriction Does Not Violate the Second Amendment*

The first argument advanced by E.J. is that the firearm prohibition in section 29820 violates the Second Amendment because it is not consistent with our nation's historical tradition of firearm regulation.[2] We disagree.

---

[2] In *N.Y. State Rifle & Pistol Ass'n. Inc. v. Bruen* (2022) 597 U.S. 1 (*Bruen*), the United States Supreme Court "held that the test for assessing constitutionality under the Second Amendment is as follows: 'When the Second Amendment's plain text covers an

*[footnote continued on next page]*

In *Bruen*, *supra*, 597 U.S. 1, the United States Supreme Court "established a two-part test for analyzing Second Amendment challenges." (*People v. McCowan* (2026) 117 Cal.App.5th 1071, 1082.) "At *Bruen* '[s]tep one,' courts must determine whether 'the Second Amendment's plain text covers an individual's conduct.' [Citation.] . . . [¶] If *Bruen* step one is satisfied, '[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.' " (*Ibid.*) "At the second *Bruen* step, the challenged law need not 'precisely match its historical precursors' so long as it is ' "analogous enough to pass constitutional muster." ' " (*Ibid.*; see *United States v. Rahimi* (2024) 602 U.S. 680, 692 (*Rahimi*).)

As this court has already concluded in *Alexander*, *supra*, a statute banning possession of firearms by convicted felons is not facially unconstitutional in violation of the Second Amendment because only law-abiding citizens are among the class of people covered by the text of the Second Amendment. (91 Cal.App.5th at pp. 477-480.) Multiple other published decisions have reached the same conclusion. (*People v. Richardson* (2025) 108 Cal.App.5th 1203, 1212; *People v. Odell* (2023) 92 Cal.App.5th 307, 316-317 [same]; *People v. Ceja* (2023) 94 Cal.App.5th 1296, 1301 [same].) While these decisions addressed the constitutionality of firearm prohibition following adult convictions in criminal proceedings, the reasoning of these decisions is equally applicable

---

individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command." ' " (*Alexander*, *supra*, 91 Cal.App.5th at p. 476.)

to section 29820.

"As the United States Supreme Court has recognized, the interests at stake in a juvenile delinquency proceeding parallel those at risk in a criminal prosecution." (*In re Kevin S.* (2003) 113 Cal.App.4th 97, 118.) In such a proceeding, "a minor is accused of criminal conduct." (*Ibid.*) The declaration that a minor is a ward of the juvenile court within the meaning of Welfare and Institutions Code section 602 constitutes an adjudication that the minor has violated a criminal law; (Welf. & Inst. Code, §§ 602, subd. (a); 702) and the minor can be subject "to a loss of liberty for years . . . comparable in seriousness to a felony prosecution" as a result. (*In re Kevin S.*, at p. 118.) The firearm prohibition set forth in section 29820 applicable to juvenile adjudications is merely the companion statute to section 29800 applicable to adult convictions. (*In re M.A.*, *supra*, 83 Cal.App.5th at p. 148.) Because a juvenile adjudication of wardship constitutes a determination that the minor has engaged in behavior in violation of a criminal law, the logic of *Alexander* concluding that the protections of the Second Amendment apply only to law abiding citizens forecloses E.J.'s argument in this case. If an adult may be prohibited from possession of firearms after a determination that the adult is not law abiding, then a juvenile clearly can be subject to the same prohibition upon the same determination.[3] As such, E.J. does not meet step one of the *Bruen* test.

---

[3] If anything, the state is permitted to impose greater restrictions on a minor's constitutional rights when compared to adults. (See *In re Ricardo P.* (2019) 7 Cal.5th 1113, 1118 [Even where constitutional rights are implicated, a condition of probation may be permissible in juvenile adjudications that would not be permitted for an adult criminal defendant.].)

In reply, E.J. argues that our conclusion in *Alexander* should not apply here because he has successfully rehabilitated such that he is now "law-abiding." Even if this argument had been preserved for our consideration,[4] it would not dictate a different conclusion. Assuming that E.J. is a person afforded the protections of the Second Amendment in satisfaction of step one of the *Bruen* test, we would still conclude that section 29820 is facially valid. As detailed at length in *People v. Anderson* (2024) 104 Cal.App.5th 577 (*Anderson*), "sources from 17th-century England, colonial America, and the early federal period demonstrate that California's felon-in-possession firearm regulations comport with our national tradition of firearm regulation"; "categories of persons thought to pose a danger to the community were forbidden to have arms, and individuals were sometimes disarmed as a consequence of being convicted of criminal conduct"; and "[w]hen the founding generation framed and debated constitutional text, it considered such limitations inherent in the right the Second Amendment protects." (*Id.* at pp. 589-590; see *People v. Gomez* (2025) 110 Cal.App.5th 419, 439 [agreeing with *Anderson*].) As explained in *Anderson*, California's disarmament laws are sufficiently analogous to these historical analogues to pass constitutional muster under *Bruen* and *Rahimi*. (*Anderson*, at p. 598.); that is, they are " 'relevantly similar' to laws that our tradition is understood to permit." (*United States v. Rahimi*, *supra*, 602 U.S. at p. 692.)

---

[4] Because this argument rests upon a set of facts specific to E.J., the argument is clearly an " 'as applied' constitutional challenge and not a facial challenge because the argument would not apply in all circumstances." (*In re D.L.* (2023) 93 Cal.App.5th 144, 167.) And "[a]n as-applied constitutional challenge is forfeited unless previously raised." (*People v. Patton* (2019) 41 Cal.App.5th 934, 946.)

Numerous decisions by federal circuit courts have reached a similar conclusion in the context of evaluating federal statutes imposing firearm prohibitions on convicted felons.  (See *United States v. Schnur* (5th Cir. 2025) 132 F.4th 863, 870 [For persons previously convicted for a " 'crime of violence,' " "the regulation of such person's ability to possess a firearm 'is consistent with this Nation's historical tradition of firearm regulation.' "]; *Zherka v. Bondi* (2nd Cir. 2025) 140 F.4th 68, 90-91 ["[T]he prohibition of firearms possession by persons convicted of felonies . . . is based on those persons' prior *conduct*, formally admitted or proven beyond a reasonable doubt, that constitutes a serious violation of the law" and firearm prohibition for such persons "is an appropriate exercise of [Congress's] longstanding power to disarm dangerous categories of persons."] (*Zherka*); *United States v. Bernard* (8th Cir. 2025) 136 F.4th 762, 765-766 [a permanent or indefinite prohibition on gun possession by person previously convicted of a violent criminal offense "is not unconstitutional on its face"]; *United States v. Canada* (4th Cir. 2024) 123 F.4th 159, 161-162 ["[T]he government may constitutionally forbid people who have been found guilty of [serious crimes] from continuing to possess firearms."].)

We find the detailed analysis set forth in *Anderson* persuasive on this point and agree with its conclusion.  Thus, even if we assume that E.J. can now be considered a person who enjoys the rights afforded by the Second Amendment, a statute that regulates the possession of firearms as a consequence of a prior determination that the person has engaged in criminal conduct is not facially unconstitutional.  The statute survives scrutiny under step two of the *Bruen* test because such regulation is consistent with our nation's

8

historical tradition of firearm regulation, even at the time the founders adopted the Second Amendment.

C. *Section 29820's Reference to Age Does Not Render It Facially Unconstitutional*

E.J. also briefly suggests that section 29820 is unconstitutional because it limits firearm possession by a juvenile offender until age 30 and "[t]he Second Amendment does not permit disabilities that rest on 'age-as-proxy-for-risk.' " We disagree.

Here, E.J. seeks to cast the statute's reference to "age 30" as an age-based disability and thereafter relies on a series of cases from federal circuit courts finding that firearm restriction based solely on age is unconstitutional. However, we find the premise of E.J.'s argument flawed. On its face, section 29820 restricts firearm possession based upon an adjudication that the person has committed specific statutory violations resulting in a declaration of wardship. (§ 29820, subd. (a).) The statute's reference to "30 years of age" simply designates the point at which the firearm restriction is lifted. (§ 29820, subd. (b).)

Thus, on its face, the text of the statute does not impose any restriction on any person's Second Amendment rights *because* of that person's age. The restriction is imposed as the result of a prior juvenile adjudication that the person has engaged in criminal conduct. And, as we have already explained, such regulation does not violate the Second Amendment. Since imposition of a firearm restriction is constitutional for criminal offenders, regardless of age, E.J. has not established that section 29820 is invalid merely because it designates a point in time at which the restriction will be lifted.

9

D. *Section 29820 Does Not Violate Due Process*

E.J. also argues that section 29820 is unconstitutional because it imposes a categorical restriction and fails to offer any mechanism to obtain an individual assessment of dangerousness, depriving him of due process under the Fourteenth Amendment. Again, we disagree.

By its plain terms, section 29820 applies based solely on the fact that a person was previously adjudged a ward of the juvenile court for violation of specified criminal statutes. (§ 29820, subd. (a)(2).) As explained by both the United States Supreme Court and California Supreme Court, where the application of a statute is based upon the "fact of previous conviction, not the fact of current dangerousness," due process does not require a further opportunity to contest whether an individual is dangerous because "due process does not entitle him to a hearing to establish a fact that is not material under the challenged statute." (*Conn. Dep't of Pub. Safety v. Doe* (2003) 538 U.S. 1, 4, 7; *Doe v. California Dept. of Justice* (2009) 173 Cal.App.4th 1095, 1113.)

Because E.J. asserts only a facial challenge to section 29820 in this appeal, we look only to the text of the statute at issue. And because the application of section 29820 is based upon the fact of a prior juvenile adjudication and not a determination of E.J.'s risk of danger, the absence of an individualized hearing or mechanism to establish E.J.'s risk of danger to society does not violate the Fourteenth Amendment's due process protections. By all accounts, the record suggests that E.J. has been successful thus far in his efforts at rehabilitation. Such efforts should be recognized and are commendable. However, the Legislature has not conditioned the firearm prohibition set forth in section

10

29820 on a determination of individual risk to society.[5]  And due process does not entitle E.J. to a hearing to contest facts that ultimately have no bearing on the application of the statute he seeks to challenge.

E.  *The Belatedly Asserted As-Applied Challenge Is Forfeited*

Finally, we briefly address E.J.'s argument that "the firearm prohibition operates as a purely punitive sanction at this stage of [E.J.'s] life" because he has "successfully completed probation, had the offense reduced and the record sealed," and "[t]here is no evidence in the record that [E.J.] poses a danger to public safety or that continued disarmament serves any rehabilitative function."  Because this argument rests upon a set of facts specific to E.J., the argument is clearly an as-applied challenge and not a facial

---

**5**  We do not necessarily disagree with E.J.'s contention that the purpose of the juvenile delinquency system is to promote rehabilitation and protect the public. However, Congress and the Legislature are constitutionally permitted to make categorical restrictions on the possession of firearms based upon prior convictions when enacting statutes with a public safety purpose.  (*Zherka*, *supra*, 140 F.4th at p. 96 [due process does not require finding of individual dangerousness where federal statute "constitutionally disarms felons as a class"]; *United States v. Duarte* (2025) 137 F.4th 743, 760-761 ["[O]ur historical tradition reveals that legislatures were permitted to categorically disarm those they deemed dangerous without having to perform 'an individualized determination of dangerousness as to each person in a class of prohibited persons.' "]; *United States v. Jackson* (2024) 110 F.4th 1120, 1127-1128 [same]; *United States v. Ogilvie* (2025) 153 F.4th 1098, 1109 [constitution does not require individualized assessment before categorical disarming those charged with serious offenses during pretrial detention].)  The decision whether to condition a restriction on a categorical legislative determination as opposed to an individualized assessment rests with the Legislature.

11

challenge.  (*In re D.L.*, *supra*, 93 Cal.App.5th at p. 166.)[6]  We conclude this argument has been forfeited for two independent reasons.

First, E.J.'s opening brief characterizes his appeal as purely a facial challenge to the constitutionality of section 28920, expressly for the purpose of avoiding forfeiture. His as-applied argument was raised for the first time in the reply brief.  " ' " '[T]he rule is that points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before.' " ' "  (*Cox v. Griffin* (2019) 34 Cal.App.5th 440, 453.)  Absent good cause, the argument may be deemed forfeited. (*People v. Bagsby* (2024) 106 Cal.App.5th 1040, 1061.)  No good cause for the failure to present the argument earlier has been shown by appellant here.

Second, "constitutional challenges to probation conditions must ordinarily be brought in the trial court, unless the challenge constitutes a facial challenge."  (*People v. Gonzalez* (2020) 57 Cal.App.5th 960, 975.)  "An as-applied constitutional challenge is forfeited unless previously raised."  (*People v. Patton* (2019) 41 Cal.App.5th 934, 946.) As the People correctly point out, the record does not indicate E.J. raised an as-applied challenge in the juvenile court.  Thus, we also deem the argument forfeited for this additional reason.

---

[6]  Generally, " '[a]n as applied challenge may seek . . . relief from a specific application of a facially valid statute or ordinance to an individual or class of individuals who are under allegedly impermissible present restraint or disability as a result of the manner or circumstances in which the statute or ordinance has been applied.' "  (*In re T.F.-G.* (2023) 94 Cal.App.5th 893, 911.)

## IV.  DISPOSITION

The order is affirmed.

CERTIFIED FOR PUBLICATION

FIELDS                         
                            J.

We concur:

RAMIREZ                  
                    P. J.


RAPHAEL                 
                    J.

13