Filed 2/2/21  Agindotan v. Wells Fargo & Co. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| NAJITE AGINDOTAN, | B298039 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC587013) |
| v. | |
| WELLS FARGO & COMPANY et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Terry A. Green, Judge.  Affirmed.

Law Office of Harold W. Dickens III and Harold W. Dickens III for Plaintiff and Appellant.

Buchalter, Daniel Harrison Wu and Robert Collings Little for Defendants and Respondents.

———————————————

Plaintiff Najite Agindotan appeals from a judgment of dismissal entered as to defendants Wells Fargo & Company, Wells Fargo Bank, National Association, and Wells Fargo Bank, Ltd. (Wells Fargo defendants), after the trial court sustained without leave to amend the Wells Fargo defendants' demurrer to Agindotan's first amended complaint. Agindotan asserted causes of action for false imprisonment, violation of the Unruh Civil Rights Act, negligence, and negligent infliction of emotional distress, alleging he attempted to cash a check at a Wells Fargo bank when the bank teller called the police to report his check was counterfeit. Agindotan remained at the bank location until the police arrived, at which point he was handcuffed and detained for three hours until the check was determined to be authentic.

The trial court found the bank teller's call to the police was absolutely privileged under Civil Code section 47, subdivision (b),[1] which provides immunity for the reporting of possible violations of law to law enforcement, relying on the Supreme Court's decision in *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 356 (*Hagberg*). On appeal, Agindotan contends section 47, subdivision (b), does not apply to the facts of this case, and the trial court erred in denying him leave to amend. We affirm.

---

[1] All further undesignated statutory references are to the Civil Code.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *The First Amended Complaint*

Agindotan initiated this action on July 2, 2015.  After the trial court granted the Wells Fargo defendants' motion for judgment on the pleadings with leave to amend, Agindotan filed the operative first amended complaint on April 24, 2018, alleging causes of action for false imprisonment (first cause of action); violation of the Unruh Civil Rights Act (second cause of action); negligence (third cause of action); and negligent infliction of emotional distress (fourth cause of action) against the Wells Fargo defendants and unnamed Doe defendants.[2]

The first amended complaint alleged Agindotan is a "world renowned professional African drummer and recording artist from Nigeria" and a lawful permanent resident of the United States.  On July 8, 2013 Agindotan entered a Wells Fargo branch location in Los Angeles to cash a $500 check issued to him by Community Partners as compensation for a musical performance.  Upon receiving Agindotan's check, the bank teller refused to cash it, instead calling the branch manager to inspect the check.  Without contacting Community Partners or consulting the bank's file on Community Partners to check the signature on file to verify the check's legitimacy, the branch manager determined the check was forged.  The first amended complaint alleged this determination was "based on a [b]ank policy, and well-established protocol of profiling, examining and assessing

---

[2]     The first amended complaint also alleged a fifth cause of action against Does 2, 3, and 4 for violation of Agindotan's First and Fourteenth Amendment rights under the United States Constitution.  That claim is not before us.

3

customers of African descent, and particularly those of Nigerian descent, with a heightened suspicion of criminality." The branch manager or teller then called law enforcement and "issued a false report that [Agindotan] was attempting to cash a forged check and requested that [Agindotan] be arrested." Two police officers then arrived to the branch location and "seized and arrested [Agindotan] and detained and restrained him against his will and over his protest, without any warrant of arrest or any process of any kind and without any justification or cause to believe that [Agindotan] had committed any crime." The police officers placed Agindotan in "unreasonably tightened" handcuffs for around three hours. The handcuffs caused Agindotan pain and permanent injury that "seriously hampered his ability to play drums professionally and make a living." After the authenticity of the check was confirmed with Community Partners, Agindotan was released.

B.      *The Bank's Demurrer and Trial Court's Order*

The Wells Fargo defendants demurred to the first through fourth causes of action of the first amended complaint, arguing their conduct in contacting law enforcement regarding the check was absolutely privileged under section 47, subdivision (b), and Agindotan had failed to allege facts sufficient to constitute the challenged causes of action. The Wells Fargo defendants concurrently filed a motion to strike portions of the first amended complaint, including the prayer for punitive damages.

After a hearing, on April 12, 2019 the trial court sustained the demurrer without leave to amend. The trial court found the Wells Fargo defendants' communications with the police were protected by the litigation privilege under section 47, subdivision

4

(b), citing to the Supreme Court's decision in *Hagberg, supra*, 32 Cal.4th 350. The court observed, "There is no allegation that any Wells Fargo employee laid a hand on [Agindotan]." The court also noted a cause of action for malicious prosecution "could survive under *Hagberg*," but Agindotan had abandoned the malicious prosecution cause of action he had alleged in his original complaint. The court "share[d] [Agindotan's] concern" the Wells Fargo defendants, as alleged, were biased against him based on his Nigerian ancestry, but it ruled "that concern is not sufficient reason to change the result." The court found the motion to strike was moot in light of its ruling on the demurrer.

On May 22, 2019 Agindotan filed a notice of appeal from a "[j]udgment of dismissal after an order sustaining a demurrer," purporting to appeal from the trial court's April 12, 2019 ruling. On September 30, 2020 we issued an order directing counsel for Agindotan to file with this court a file-stamped copy of a signed judgment or order of dismissal, or we would dismiss his appeal. On October 14, at the parties' request, the trial court entered a judgment in favor of the Wells Fargo defendants and ordered the action dismissed.[3] We consider Agindotan's premature notice of appeal a valid "notice of appeal filed after judgment is rendered but before it is entered," and treat the notice as filed immediately after entry of judgment. (Cal. Rules of Court, rule 8.104(d)(1); see *Valdez v. Seidner-Miller, Inc.* (2019) 33 Cal.App.5th 600, 607.)

---

[3] We grant Agindotan's request we take judicial notice of the October 14, 2020 judgment. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

# DISCUSSION

## A. *Standard of Review*

"'In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory.'" (*Mathews v. Becerra* (2019) 8 Cal.5th 756, 768; accord, *T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) When evaluating the complaint, "we assume the truth of the allegations." (*Lee v. Hanley* (2015) 61 Cal.4th 1225, 1230; accord, *McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) "A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground." (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324; accord, *Summers v. Colette* (2019) 34 Cal.App.5th 361, 367.)

A trial court abuses its discretion by sustaining a demurrer without leave to amend where "'there is a reasonable possibility that the defect can be cured by amendment.'" (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100; accord, *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.) "'The plaintiff has the burden of proving that [an] amendment would cure the legal defect, and may [even] meet this burden [for the first time] on appeal.'" (*Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority* (2018) 19 Cal.App.5th 1127, 1132; accord, *Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 971.)

"'[A] demurrer based on an affirmative defense will be sustained only where the face of the complaint discloses that the action is necessarily barred by the defense.'" (*Stella v. Asset*

6

*Management Consultants, Inc.* (2017) 8 Cal.App.5th 181, 191; accord, *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191 [application on demurrer of affirmative defense of statute of limitations based on facts alleged in a complaint is a legal question subject to de novo review]; *Favila v. Katten Muchin Rosenman LLP* (2010) 188 Cal.App.4th 189, 224 ["'It must appear clearly and affirmatively that, upon the face of the complaint [and matters of which the court may properly take judicial notice], the right of action is necessarily barred.'"].)

B.   *The Trial Court Did Not Err in Sustaining the Wells Fargo Defendants' Demurrer to Agindotan's Cause of Action for False Imprisonment*

"""[T]he tort of false imprisonment is the nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time . . . ." [Citation.] A person is falsely imprisoned "if he is wrongfully deprived of his freedom to leave a particular place by the conduct of another."'" (*Hagberg, supra*, 32 Cal.4th at pp. 372-373; accord, *Fermino v. Fedco, Inc.* (1994) 7 Cal.4th 701, 715.) "Restraint may be effectuated by means of physical force [citation], threat of force or of arrest [citation], confinement by physical barriers [citation], or by means of any other form of unreasonable duress." (*Fermino*, at p. 715; accord, *Jon Davler, Inc. v. Arch Ins. Co.* (2014) 229 Cal.App.4th 1025, 1034 ["False imprisonment involves coercion, by force, threat, or otherwise."]; *Scofield v. Critical Air Medicine, Inc.* (1996) 45 Cal.App.4th 990, 996.)

Agindotan contends the trial court erred in sustaining the Wells Fargo defendants' demurrer to his false imprisonment cause of action. We agree with the Wells Fargo defendants the

7

claim is barred by the litigation privilege and Agindotan has not carried his burden to show an amendment would cure the legal defect.

1. *Under* Hagberg, *the Wells Fargo defendants' communications to law enforcement were absolutely privileged*

"Section 47 establishes a privilege that bars liability in tort for the making of certain statements.  Pursuant to section 47(b), the privilege bars a civil action for damages for communications made '[i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to [statutes governing writs of mandate],' with certain statutory exceptions that do not apply to the present case.  The privilege established by this subdivision often is referred to as an 'absolute' privilege, and it bars all tort causes of action except a claim for malicious prosecution." (*Hagberg, supra*, 32 Cal.4th at p. 360; accord, *Cox v. Griffin* (2019) 34 Cal.App.5th 440, 448.)  "'The privilege extends beyond statements made *in* the proceedings, and includes statements made to *initiate* official action.'" (*Hagberg*, at p. 362; accord, *Dean v. Friends of Pine Meadow* (2018) 21 Cal.App.5th 91, 108.) "This privilege applies even if the statement was false and made with malice." (*Cox*, at p. 448; accord, *Hagberg*, at p. 361 [privilege applies "without respect to the good faith or malice of the person who made the statement, or whether the statement ostensibly was made in the interest of justice"]; *Dean*, at p. 107 ["'The litigation privilege is absolute; it applies, if at all, regardless whether the communication was made with malice or

8

the intent to harm.'"].)  The privilege "should be given an expansive reach."  (*Hagberg*, at p. 370.)

In *Hagberg*, the plaintiff, a Hispanic woman, attempted to cash a check issued to her by a commercial institution at a branch location of a bank where she held an account.  (*Hagberg, supra*, 32 Cal.4th at p. 355.)  The teller and her supervisor suspected the check was counterfeit.  (*Ibid.*)  The supervisor contacted the check issuer, which stated the check was not valid.  (*Id.* at pp. 355-356.)  After conferring with bank security, the supervisor called the police and reported a customer was attempting to negotiate a counterfeit check.  (*Id.* at p. 356.)  The supervisor told the police "the bank's corporate security officer 'just wants somebody to hang on to her [until] he can check this out.'"  (*Ibid.*)  Through the security officer, the supervisor learned the check was not counterfeit, but by that time the police had arrived.  (*Ibid.*)  The police searched, handcuffed, and questioned the plaintiff; as the plaintiff was being arrested, the teller announced she "'looked like a criminal.'"  (*Ibid.*)  Twenty minutes later the plaintiff was released.  (*Ibid.*)

The plaintiff sued the bank, alleging causes of action for false imprisonment, violation of the Unruh Civil Rights Act, slander, invasion of privacy, intentional infliction of emotional distress, and negligence.  (*Hagberg, supra*, 32 Cal.4th at p. 357.)  The Supreme Court affirmed the trial court's granting of the bank's summary judgment motion, holding section 47, subdivision (b)'s absolute privilege barred the imposition of tort liability when a business establishment contacts law enforcement to report suspected criminal activity.  (*Hagberg*, at p. 376.)  In so doing, the Supreme Court endorsed the approach of the majority of Courts of Appeal "that a statement urging law enforcement

9

personnel to investigate another person's suspected violation of criminal law, to apprehend a suspected lawbreaker, or to report a crime to prosecutorial authorities is shielded from tort liability" under section 47, subdivision (b), because "such communications are at least preparatory to 'any other official proceeding authorized by law.'" (*Hagberg*, at p. 364.)

Agindotan's false imprisonment claim is on all fours with *Hagberg* and is therefore barred by the litigation privilege. As in *Hagberg*, the Wells Fargo defendants called the police to report a customer attempting to negotiate a check believed to be counterfeit. And as in *Hagberg*, Agindotan was arrested, handcuffed, and detained only after the police arrived. Agindotan's attempt to distinguish *Hagberg* based on the alleged malice of the teller and branch manager fails because the privilege is absolute and does not depend on the absence of malice. (*Hagberg, supra*, 32 Cal.4th at p. 361; *Cox v. Griffin, supra*, 34 Cal.App.5th at p. 448.)

2. *The trial court's denial of leave to amend was not an abuse of discretion*

Agindotan contends the trial court abused its discretion in denying him leave to file a second amended complaint with additional allegations the Wells Fargo defendants executed a "citizen's arrest" of Agindotan and they induced him to remain in the bank until the police arrived by deceiving him into believing the teller was verifying the check. Neither allegation would cure the legal deficiencies in his cause of action for false imprisonment. Further, Agindotan proffers only a conclusory allegation he "was arrested at the request of [the Wells Fargo defendants] which can be plead[ed] as a Citizen's Arrest."

10

The two cases relied on by Agindotan to support his theory of a cognizable claim based on a citizen's arrest, *Buchanan v. Maxfield Enterprises, Inc.* (2005) 130 Cal.App.4th 418 (*Buchanan*) and *Kesmodel v. Rand* (2004) 119 Cal.App.4th 1128 (*Kesmodel*), are distinguishable.  In *Buchanan*, the plaintiff was shopping at a high-end store at the same time a celebrity couple was in the store.  (*Buchanan*, at p. 421.)  The store manager asked the plaintiff leave but did not say why.  (*Ibid*.)  When the plaintiff refused, the store's head of security asked sheriff's deputies to arrest him and remove him from the store.  (*Ibid*.)  The deputies stated that store personnel would have to make a citizen's arrest.  (*Ibid*.)  The head of security then made a citizen's arrest of the plaintiff for trespassing, after which the deputies handcuffed and removed him.  (*Id.* at pp. 421-422.)  The store manager, head of security, and deputies left the store with the plaintiff in handcuffs, leading him before a "'media circus'" congregated due to the presence of celebrities.  (*Id.* at p. 422.)  The Court of Appeal reversed the trial court's sustaining of the store's demurrer based on the litigation privilege.  (*Id.* at pp. 420, 428.)  The court distinguished *Hagberg* based on the noncommunicative nature of the conduct at the heart of the plaintiff's claims—that store personnel effected a citizen's arrest and then participated in walking the plaintiff out of the store in front of the media.

In *Kesmodel,* the plaintiff was accused by a neighbor of using the neighbor's water spigot and looking into her bedroom window.  (*Kesmodel, supra*, 119 Cal.App.4th at p. 1132.)  The neighbor called the police, but the sheriff's deputy who arrived on the scene explained she could not arrest the plaintiff based only on the neighbor's report, instead suggesting the neighbor could

11

make a citizen's arrest.  (*Id.* at pp. 1132-1133.)  The neighbor's son then completed a citizen's arrest form, and the deputy took the plaintiff into custody.  (*Id.* at p. 1133.)  This court affirmed the jury verdict for false imprisonment against the neighbor and her son, holding the son's act of signing the citizen's arrest form was noncommunicative conduct falling outside the litigation privilege under section 47, subdivision (b).  (*Kesmodel*, at pp. 1136-1137.)

While *Buchanan* and *Kesmodel* stand for the proposition a false citizen's arrest may give rise to tort liability notwithstanding the litigation privilege, that is because ""'section 47, subdivision (b)(2), applies only to communicative acts and does not privilege tortious courses of conduct.'""  (*Buchanan, supra*, 130 Cal.App.4th at p. 423; accord, *Kimmel v. Goland* (1990) 51 Cal.3d 202, 211 [distinguishing injuries from noncommunicative and communicative acts].)  Where the alleged actions are "communicative in their essential nature," the privilege applies.  (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1196; accord, *Buchanan*, at p. 423.)[4]

Agindotan's proposed amendment—to allege he was arrested at the request of Wells Fargo personnel—would continue to allege communicative acts culminating in Agindotan's arrest

---

[4]     Agindotan's effort to frame this case as one about a false arrest does not save his claim.  "False imprisonment consists of the unlawful violation of the personal liberty of another person; a false arrest is merely one way in which a false imprisonment may be accomplished—the two are not separate torts."  (*Hagberg, supra*, 32 Cal.4th at p. 372, fn. 7; accord, *Kesmodel, supra*, 119 Cal.App.4th at p. 1137 ['"False arrest is not a different tort but merely one way of committing the tort of false imprisonment."'].)

by the responding police officers, not a noncommunicative formal citizen's arrest executed by the Wells Fargo defendants. Indeed, the proposed allegations are not factually distinguishable from *Hagberg*, in which the bank's security officer requested the police "'hang on to [the plaintiff] [until] he can check this out.'" (*Hagberg, supra*, 32 Cal.4th at p. 356.)

Agindotan's additional proposed allegations—that the bank teller deceived him into believing she was verifying his check while she contacted the police, and the teller and manager knew Agindotan would not leave without his check (or its value in cash), causing him to remain in the bank—also do not cure his false imprisonment cause of action. It is true the unlawful restraint element of false imprisonment may be met "not only by force or threat of force, but also by fraud or deceit, or any other form of unreasonable duress." (*Scofield v. Critical Air Medicine, Inc., supra*, 45 Cal.App.4th at p. 996; see *id.* at p. 1009 [affirming jury's award for false imprisonment accomplished by fraud or deceit where plaintiff's children were airlifted from Mexico to the United States by an unauthorized air carrier that misrepresented its authority to the children]; accord, *Wilson v. Houston Funeral Home* (1996) 42 Cal.App.4th 1124, 1135 [restraint of plaintiffs was actionable where mortician drove plaintiffs, who believed they were on their way to their relative's funeral, to a bank and verbally informed plaintiffs they could not leave until they paid him].)

But Agindotan does not propose to allege the bank employees verbally forced him to remain in the bank, for example, by threatening he would lose his check if he left the bank before the police arrived. Nor does he allege he made any attempt to leave the bank before the police arrived and was

13

thwarted.  Instead, according to Agindotan's allegations, he elected to remain in the bank because he thought (albeit incorrectly) that the teller was confirming the authenticity of the check.  Agindotan's proposed amendment also fails to allege for how long he remained at the bank under the false impression the bank was verifying the check issuer's signature before the police arrived.  Although restraint may be actionable if it persists for a "length of time . . . as brief as 15 minutes," the """"appreciable length of time"""" of the restraint is an essential element of the tort of false imprisonment.[5]  (*Fermino v. Fedco, Inc., supra*, 7 Cal.4th at p. 715; accord, *Hagberg, supra*, 32 Cal.4th at pp. 372-373.)

Finally, Agindotan urges us to grant him leave to amend to allege a claim under the Unruh Civil Rights Act.  But he already alleged in his first amended complaint a claim under that statute.  He does not seek to allege additional facts to make the claim viable.  Nor has he presented any argument in his opening or reply brief explaining why the trial court erred in ruling his Unruh Civil Rights Act claim was not subject to the litigation privilege, thereby forfeiting any argument as to the claim.  (*Aptos Council v. County of Santa Cruz* (2017) 10 Cal.App.5th 266, 296, fn. 7 ["Issues not raised in the appellant's opening brief are

---

[5]     *Schanafelt v. Seaboard Finance Co.* (1951) 108 Cal.App.2d 420, relied on by Agindotan, is not to the contrary.  There, the Court of Appeal affirmed a jury verdict for the plaintiff on a false imprisonment claim where an employee of a furniture company, in an effort to repossess plaintiff's furniture because she was delinquent in her payments, blocked her driveway with his car to prevent her exit and verbally forbade her from leaving the house until a truck arrived to remove plaintiff's repossessed furniture, despite the plaintiff's requests to leave to get food.  (*Id.* at p. 422.)

deemed waived or abandoned."]; *Altavion, Inc. v. Konica Minolta Systems Laboratory, Inc.* (2014) 226 Cal.App.4th 26, 63 [argument made for the first time in reply brief is forfeited].)

We agree Agindotan's allegations that the bank detained him and falsely accused him of trying to pass a counterfeit check based on his Nigerian descent, if true, reflect deeply troubling conduct. But as discussed, it still would not be actionable as false imprisonment because the litigation privilege applies regardless of whether the alleged tortfeasor acts with malice. And Agindotan has not articulated why the same facts would support an Unruh Civil Rights Act claim notwithstanding the litigation privilege.[6]

---

[6] We note the *Hagberg* court did not resolve "whether proof that a business establishment has called for police assistance (or has a policy of calling for police assistance) based on racial or ethnic prejudice could give rise to liability under the Unruh Civil Rights Act notwithstanding the provisions of section 47(b)." (*Hagberg, supra*, 32 Cal.4th at p. 376.) Because Agindotan fails substantively to brief the viability of this claim, we do not reach it. Agindotan also has not challenged dismissal of his causes of action for negligence and negligent infliction of emotional distress, forfeiting any argument those claims should not have been dismissed.

## DISPOSITION

The judgment is affirmed.  Defendants are to recover their costs on appeal.


FEUER, J.

We concur:


PERLUSS, P. J.


SEGAL, J.